### SANFORD v. HOWARD.

No. 28468.   Sept. 26, 1939.

Rehearing Denied Nov. 14, 1939.

Bohanon & Adams, Bert Barefoot, Jr., and A. V. Dinwiddie, for plaintiff in error.

Amos T. Hall and Adams & Barnes, for defendant in error.

BAYLESS, C. J. Pearl Howard, now defendant in error but plaintiff in the court below, sued J. W. Sanford in the district court of Logan county, Okla., with a view to recovering damages for alleged slander. And after trial, and pursuant to a jury's verdict which found generally in her favor and fixed the amount of her recovery at $1,000, the trial court accordingly rendered judgment against the defendant, Sanford. From the action of the trial court in overruling his motion for a new trial and in rendering said judgment, J. W. Sanford has appealed.

In her petition said plaintiff alleged as the basis for her charge of slander that:

"* * * On the 2d day of April, 1937, she was in the employ of Langston University, and that on said day and on numerous other occasions in the town of Langston, county of Logan, state of Oklahoma, in a certain discourse and conversation which said defendant had with and in the hearing and presence of certain persons, to wit, John Austin, W. L. Jones, and other persons whose names are to the plaintiff unknown, maliciously, falsely and slanderously spoke and published of and concerning this plaintiff certain slanderous, false, defamatory words as follows, to wit: 'Pearl Howard was arrested in Guthrie, Oklahoma, on the 20th day of March, for immoral conduct; that she was naked at the time and was engaged in a sexual intercourse'."

The defendant's answer was one which, in addition to pleading general denial, also in

effect pleaded the doctrine of privileged communication. And in relation to the latter it was alleged, in substance, that while the defendant denied making the statement charged in the plaintiff's petition, as well as having made such statement to the individuals named in said petition, he did at a time while holding and occupying the position of President of the Colored Agricultural and Normal University of Oklahoma make a certain statement to the Board of Regents of said University, at a certain time and place stated when and where said board was assembled and convened in regular session; the statement being, in substance, as follows: That he, Sanford, had theretofore been informed by one Raigan, a police officer of the city of Guthrie, Okla., that one W. L. Jones and a woman had been arrested in a certain house in Guthrie; and that he, Sanford, had also been informed by said police officer that the woman so arrested was Pearl Howard, and that Jones and the said Pearl Howard were charged in the police court of the city of Guthrie with the crime of immoral conduct. He also alleged that at the time he made said statement he honestly believed same to be true, and that same was made by him in good faith and without malice.

The record reflects that, at the trial in the court below, no attempt was made on the part of the plaintiff to establish that the defendant at any time, place, or occasion stated or referred to in her petition had made or communicated to any of the individuals named or referred to in the petition the statement charged in said petition. And as we read the record, the proof on her part relative to any statements made by the defendant, as well as the proof in that regard which was made on the part of the defendant, was, in substance, as follows: That on April 3, 1937, at a time and place when and where the Board of Regents of the Colored Agricultural and Normal University was assembled and convened in regular session, the defendant, then and there holding and occupying the position of President of the aforenamed University, appeared in person before said Board of Regents at said regular session and there orally stated to said board the following, in substance: That he, Sanford, had theretofore been informed by one Ben Raigan, a police officer of the city of Guthrie, Okla., that one W. L. Jones and a woman had recently been arrested while together in a room in a certain house in Guthrie; and that he, Sanford, had been further informed by said police officer that the woman so arrested was Pearl Howard.

From the record it further appears that at the time the defendant made the afore-mentioned statement to the Board of Regents, both W. L. Jones and Pearl Howard were employees at the University, the former being employed as supervisor of buildings and grounds and the latter as a matron. It also appears that at the trial it was conclusively established, and there neither disputed nor contested by the plaintiff, that prior to the date of its regular session held on April 3, 1937, the Board of Regents had imposed upon the defendant as President of the University the duty of reporting to the board "any misconduct" or "any irregularity" on the part of any "teacher or employee of the University".

In Newell on Libel and Slander (2d Ed.) it is stated:

"Sec. 505. The Subject Classified.—The occasion upon which privileged communications are made may be classified as those absolutely privileged and those in which the privilege is qualified."

"Sec. 506. First. Absolute Privilege.—In this class of cases it is considered in the interest of public welfare that all persons should be allowed to express their sentiments and speak their minds fully and fearlessly upon all questions and subjects; and all actions for words so spoken are absolutely forbidden, even if it is alleged and proved that the words were spoken falsely, knowingly and with express malice. This rule is, however, confined to cases in which the public service or the administration of justice requires complete immunity — for example, words spoken in legislative bodies, in debates, etc.; in reports of military officers on military matters to their superiors; words spoken by a judge on the bench and by witnesses on the stand. In all such cases the privilege afforded by the occasion is in law an absolute bar to an action for defamation. In these cases the plaintiff cannot be heard to say that the defendant did not act under the privilege, that he did not intend honestly to discharge a duty, but maliciously availed himself of the occasion to injure his reputation."

The statute (sec. 726, O. S. 1931; 12 Okla. St. Ann. § 1443) provides:

"A privileged publication or communication is one made:

"First. In any legislative or judicial proceeding or any other proceeding authorized by law.

"Second. In the proper discharge of an official duty.

"Third. By a fair and true report of any legislative or judicial or other proceeding authorized by law, or anything said in the course thereof, and any and all expressions of opinion in regard thereto, and criticisms thereon, and any and all criticisms upon the

official acts of any and all public officers, except where the matter stated of and concerning the official act done, or of the officer, falsely imputes crime to the officer so criticised.

"In all cases of publication of matter not privileged under this section, malice shall be presumed from the publication, unless the fact and the testimony rebut the same. No publication which, under this section, would be privileged, shall be punishable as libel."

In German-American Ins. Co. v. Huntley et al., 62 Okla. 39, 161 P. 815, it was said in relation to the above statute that:

"It seems clear that the legislative intention was to recognize two classes of privileged publications, viz.: (1) Those where the occasions designated, regardless of malice, constitute an absolute excuse and preclude recovery of damages; and (2) those in which the circumstances of the defamatory publication, together with testimony, rebut the presumption of malice, thus affording a conditional excuse."

And it was further said:

"The first three paragraphs of the foregoing section specifically enumerate those occasions upon which absolute privilege attends a defamatory publication, and in this respect may be said to be exclusive. The fourth paragraph, however, is general in terms, comprehending 'all cases' where the occasion of such a publication is not absolutely privileged, and provides that malice shall be presumed therefrom, unless the fact and the testimony rebut the same. The word 'fact' is obviously therein used in its ordinary sense to denote the act, the thing done, the circumstance, the publication itself. Reasonably construed, the language employed in this paragraph may be said to provide that malice shall be presumed from the publication of defamatory matter on occasions not absolutely privileged, unless the inherent circumstances of such publication and the extrinsic evidence relative thereto rebut such presumption."

The Colored Agricultural and Normal University is a state-owned educational institution. And by statutes in force and effect at all times herein mentioned, it is provided for "the government" of said institution to be vested in a Board of Regents consisting of five members, to be composed of the State Superintendent of Public Instruction, and four members appointed by the Governor, by and with the consent of the Senate, sec. 7305, O. S. 1931; 70 Okla. St. Ann. § 1481. It is provided, further, that said Board of Regents and their successors in office shall constitute a body corporate and "shall possess all the powers necessary or convenient to accomplish the objects and perform the duties prescribed by law. * * *" Section 7306, O. S. 1931; 70

Okla. St. Ann. § 1482. And that they "shall enact rules for the government of the * * * University in all its interests". Section 7308, O. S. 1931; 70 Okla. St. Ann. § 1484. And also, that they "shall have power to appoint suitable persons as president and assistants to take charge of said University and fix the salaries of each and their several duties". Section 8020, R. L. 1910; 70 Okla. St. Ann. § 1454.

Manifestly, in the light of these statutes, the Board of Regents, being charged with the duty of governing the University "in all its interests," deemed it essential to proper government of the institution to have information of the nature which the evidence shows the defendant conveyed to said board. And to that end, according to the record before us, said board had imposed upon the defendant as one of his duties as President of the University the matter of reporting to the board "any misconduct" or "any irregularity" on the part of "any teacher or employee of the University". Hence, we think it may be said that in conveying to the Board of Regents such information as he had obtained regarding alleged misconduct of the plaintiff, the defendant was acting "in the proper discharge of an official duty" (sec. 726, supra); and, further, that the occasion upon which the defendant conveyed such information to said Board of Regents was one upon which absolute privilege attended the communication which he there made.

The judgment rendered in the trial court is therefore reversed, and the cause is hereby remanded to said court, with direction to vacate and set aside said judgment, and, to dismiss the plaintiff's action.

Reversed and remanded, with directions.

RILEY, OSBORN, GIBSON, and DANNER, JJ., concur. WELCH, V. C. J., and CORN, HURST, and DAVISON, JJ., dissent.