Naomi L. KIRSCHSTEIN, Appellant,

v.

William M. HAYNES, Alice Faye Kilgore and Michael E. Moore,
Appellees.

No. 67655.

Supreme Court of Oklahoma.

Jan. 30, 1990.

Rehearing Denied March 27, 1990.

Elvin J. Brown, Norman, for appellant.

Robert G. Perrine, Norman, for appellee Alice Faye Kilgore.

Calvin W. Hendrickson and Margaret W. Owens, Oklahoma City, for appellee William M. Haynes, M.D.

Michael E. Moore, Norman, for appellee Michael E. Moore.

LAVENDER, Justice:

Four central issues are presented in this case. They are: 1) whether we will recognize an absolute privilege to bar defamation actions for communications by attorneys, parties and witnesses having some relation to and made preliminary to a proposed judicial or quasi-judicial proceeding; 2) if the absolute privilege is recognized does it bar not only a defamation action, but a cause premised on the tort of intentional infliction of emotional distress; 3) were the trial court and the Court of Appeals correct in granting and affirming, respectively, summary judgment in favor of Appellees; and 4) was the Court of Appeals' ruling that it would not reach the merits of any issues in relation to Appellant's determination of heirs cause proper

because Appellant · failed to preserve any claim of error in said regard by failure to raise such in her petition in error.

We have determined we will recognize an absolute privilege for communications made preliminary to proposed judicial or quasi-judicial proceedings in favor of attorneys, parties and witnesses generally under the standards set forth at the Restatement (Second) of Torts §§ 586, 587 and 588 and the comments thereto. Further, the absolute privilege acts not only to bar defamation actions, but those for intentional infliction of emotional distress when based on the same factual allegations as the defamation claim. As to the privilege's application in this case we hold summary judgment was properly granted to Appellees, Michael E. Moore (attorney), William M. Haynes (witness) and Alice Faye Kilgore (party). Finally, we hold the Court of Appeals was correct in its conclusion Appellant, Naomi L. Kirschtein failed to preserve claim of error in regard to her determination of heirs cause by failure to include such in her petition in error.

This case appears to have its genesis in communications from Eva Mae, the sister of Appellant, to Kilgore to the effect Eva Mae did not believe she was Kilgore's mother. These communications apparently coincided with Kilgore's inability to find any record of a birth certificate on file with State authorities. Kilgore was primarily raised by her father, Alvin E. Salsman and his family since she was approximately two years old. About said time Eva Mae was institutionalized at the State mental health facility in Vinita, Oklahoma. In her deposition Eva Mae stated she remembered having only one child (the eldest) and had no memory of having any other children generally attributed to her (three in number), including Kilgore. According to Moore's deposition Kilgore told him the father, Salsman refused to discuss the circumstances of her birth with her.

Appellees, Kilgore and Moore, an attorney licensed to practice law in Oklahoma, worked in the same office building in Norman, Oklahoma. Kilgore requested Moore to assist her in recording a birth certificate with the Oklahoma Department of Health (ODH). Moore agreed. Moore did some preliminary research and determined a delayed birth certificate could be obtained from ODH. The statute covering delayed birth certificates is found at 63 O.S.1981, § 1–313.[1] Section 1–313 allows for filing a delayed birth certificate for a person born in this State in accordance with evidentiary requirements established by the Oklahoma State Board of Health to establish the facts of birth, including date and place of birth and parentage.[2] Another statutory provi-

---

1. 63 O.S.1981, § 1–313 provides:
 (a) When the birth of a person born in this state has not been registered, a certificate may be filed in accordance with regulations of the State Board of Health. Such certificate shall be registered subject to such evidentiary requirements as the Board shall by regulation prescribe, to substantiate the alleged facts of birth.
 (b) Certificates of birth registered one year or more after the date of occurrence shall be marked "delayed" and show on their face the date of the delayed registration.
 (c) A summary statement of the evidence submitted in support of the delayed registration shall be endorsed on the certificate.
 (d) When an applicant does not submit the minimum documentation required in the regulations for delayed registration, or when the State Commissioner of Health finds reason to question the validity or adequacy of the documentary evidence, the Commissioner shall not register the delayed certificate and shall advise the applicant of the reasons for his action.

2. The evidentiary requirements of ODH regarding filing of delayed birth certificates are found at 16 Okla.Gaz. 1239–1240 (1977). Such rules are part of ODH's Rules and Regulations Governing Vital Statisics Registration, 16 Okla.Gaz. 1238–1247 (1977). Part II of the rules concern birth registration, including delayed birth certificates, which are used for those persons who have reached or passed his/her tenth birthday. Although there have been revisions in Part II since January 1, 1978 (the effective date of the rules) none of them are pertinent to our inquiry concerning delayed birth certificates. The evidentiary requirements are set forth at Part II(5)(c) which provides:
 C. For the registrant who has reached or passed his tenth birthday, the facts of birth shall be established by presentation of the following proof to the State Registrar: the presentation of three (3) records, each from a different and independent source. To be acceptable as proof the records must have been made five (5) years or more previous to the filing of the certificate, with the exception of

sion, 63 O.S.1981, § 1–315, provides for a judicial proceeding for an order establishing a record of birth and parentage to one who has lived in Oklahoma for ten (10) years, the last three (3) continuous.[3]

In an effort to obtain information to procure a delayed birth certificate Moore contacted Appellee, William M. Haynes, M.D., an elderly physician in the town where it was believed Kilgore was born as a potential affiant to the circumstances of birth. In his deposition Haynes stated Moore came to see him to ask if he had any memory of Kilgore's birth. He testified he told Moore he had no memory of her birth and knew of no records which would cover the event. Moore, however, mailed an affidavit to Haynes for his signature which stated Haynes remembered Naomi Bramble (Appellant's maiden name) had given birth to Kilgore. Haynes further stated in his deposition he did not remember reading the affidavit before signing it and returning it to Moore. Moore's deposition testimony appears contradictory to that of Haynes. His testimony, although somewhat equivocal, was he got the information for the affidavit from his conversation with Haynes.

Moore delivered the affidavit to Kilgore, who the record shows published it or its contents to various relatives, including Appellant.[4] Appellant testified in her deposition she had a conversation with Kilgore in which Kilgore told her the affidavit or its contents were published to find out whether it had any truth to it in view of her attempt to obtain the birth certificate.

the affidavit, and must contain information about the registrant to support the facts shown on the delayed certificate. An affidavit of personal knowledge may be used as one, but only one, of the three records of proof. All three records shall indicate the name of the registrant, the correct birth date or age of registrant, and at least two of the records shall reflect the birthplace of the registrant to be Oklahoma, and one of the records shall indicate the parentage as claimed by the registrant. The registrant shall sign the affidavit on the face of the certificate before a Notary Public attesting to the authenticity of the information as set forth on the face of the certificate.

In those instances where the registrant is unable to sign his name, he shall make his mark and two witnesses shall sign verifying the same, all before a Notary Public.

In the event the registrant is deceased, the affidavit on the face of the certificate is to be signed by the person attempting to file the certificate. It shall be noted on the face of the certificate that the registrant is deceased and the individual attempting to file the certificate shall state his relationship to the deceased or the legal authority granted him to represent the interest of the deceased.

**3.** 63 O.S.1981, § 1–315 provides:

(a) Any citizen of the United States who has resided in this state for not less than ten (10) years, the last three (3) of which must have been continuous within this state and the last one (1) of which must have been continuous within the county of his application, the birth of whom has not been recorded by the State Commissioner of Health, or his predecessor, may petition the district court of the county in which he resides or was born for an order establishing a public record of the time and place of his birth and his parentage. He may have the record of such information entered in the following manner: Such applicant may appear before a judge of the district court in the county of which he is a resident and file his verified petition in writing, which petition shall state the time and place of his birth and his parentage and such other facts as he deems pertinent; the petition shall be filed in the office of the court clerk and given a number in the probate files thereof; thereupon the applicant shall produce all the evidence he has in his possession, which may consist of personal testimony, affidavits or records, and shall include a statement from the State Commissioner of Health, or similar official in the state of applicant's birth, to the effect that a birth certificate is not recorded in his office; and if the judge of the district court shall be satisfied with the proof offered, he shall make and enter an order establishing the time and place of birth, the age and the parentage of the applicant, which order shall be final and conclusive of all the facts therein adjudged. (b) A certified copy of the order shall be filed in the office of the State Commissioner of Health, and a certified copy thereof shall be issued by the Commissioner in the same manner as certificates of birth.

Moore's deposition indicates he was assisting Kilgore in regard to a delayed birth certificate and does not expressly indicate he was contemplating the filing of a court proceeding under § 1–315 or that he was assisting Kilgore with such goal in mind.

**4.** Prior to Kilgore's alleged publications to relatives the record does not indicate it was seen by anyone other than the principals, i.e. Moore, Haynes (and his wife who notarized it) and Kilgore.

There is no record evidence either an administrative proceeding under § 1–313 or a judicial proceeding under § 1–315 has ever been initiated by Kilgore.

The instant lawsuit was initiated as a result of Kilgore's publication of the affidavit and reference to it in the aforementioned conversations. After discovery was conducted, on motion of all Appellees, the trial court granted summary judgment in their favor and dismissed Appellant's case. The order stated it found the affidavit and its publication privileged.

Appellant appealed. She argues the publications of the affidavit were not privileged and if a privilege applied it was only a conditional or qualified one, not subject to summary judgment treatment in view of the record before the trial court. She further argues even if a privilege did bar her defamation cause, her theory based on intentional infliction of emotional distress and request for determination of heirs survived because summary judgment was not specifically requested as to said claims and, thus, summary judgment was improperly granted as to her entire lawsuit. She also apparently argues the privilege would not bar these claims in any event, even assuming her defamation claim was so barred.

As noted above, the Court of Appeals affirmed the trial court. In doing so it relied on the Restatement (Second) of Torts § 586 (1977) to bar both her defamation and intentional infliction of emotional distress claims. It also ruled Appellant failed to preserve error in regard to the determination of heirs claim. Although the result reached by the Court of Appeals was correct we granted certiorari in this case because the matter is one of first impression and to outline the general parameters of the absolute privilege as applied to communications made preliminary to a proposed judicial or quasi-judicial proceeding.

Section 586 of the Restatement provides as follows:

An attorney at law is absolutely privileged to publish defamatory matter concerning another *in communications preliminary to a proposed judicial proceeding,* or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

Sections 587 and 588 contain substantially the same language in regard to publications made by parties and witnesses, respectively.[5] Comment *a* to § 586 provides in pertinent part as follows:

The privilege stated in this section is based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients. Therefore the privilege is absolute. *It protects the attorney from liability in an action for defamation irrespective of his purpose in publishing the defamatory matter, his belief in its truth, or even his knowledge of its falsity ..... The publication of defamatory matter by an attorney is protected not only when made in the institution of the proceedings or in the conduct of litigation before a judicial tribunal, but in conferences and other communications preliminary to the proceeding.* The institution of a judicial proceeding includes all pleadings and affidavits necessary to set the judicial machinery in motion .....

■ Comment *d* to § 586 provides an expansive definition of judicial proceedings to include all proceedings before an officer or other tribunal exercising a judicial function. As will be seen, in the circumstances of this case, we believe the determination by ODH (an administrative agency) or an executive officer thereof (the State Commissioner of Health or his delegate) made under § 1–313 concerning the filing of a delayed birth certificate qualifies as a quasi-judicial proceeding to which the privilege applies.[6] Finally, Comment *e* sets forth

---

**5.** Restatement (Second) of Torts, §§ 587–588 (1977).

**6.** There is some argument, at least by implication, in Appellant's appellate submissions that only a proceeding contemplated under § 1–315, *supra* note 3, can qualify as a judicial proceed-

more specific criteria for communications preliminary to a proposed proceeding. It provides:

As to communications preliminary to a proposed judicial proceeding the rule ... applies only when the communication has some relation to a proceeding that is contemplated in good faith and under serious consideration. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered.

This Court has applied an absolute privilege to communications *made during* various proceedings.[7] In said cases we construed the predecessor statute to 12 O.S. 1981, § 1443.1 to grant a privilege to utterances made in judicial or other proceedings authorized by law.[8] The situation here does not expressly fall within the statute's protection because the communications involved were all made preliminary to a proposed proceeding the record fails to disclose has ever been instituted. We, thus, must determine if the common law, as embodied in the Restatement, provides any privilege to the communications at issue.

Our first task is to determine if a proceeding under § 1-313 to file a delayed birth certificate qualifies as a quasi-judicial proceeding.[9] Under our case law a quasi-

---

ing. Further, Appellant argues that an applicant must exhaust administrative remedies under § 1–313 prior to initiating a proceeding under § 1–315 and because no exhaustion is shown by this record Kilgore could not have been contemplating a proceeding under § 1–315. Appellant misses the mark with these arguments on at least two bases. First, nothing in either statute indicates a person wishing to proceed under § 1–315 before a court must first request ODH relief. In fact, the provisions are each geared toward a different type of applicant, although overlap may exist. Section 1–313 pertains only to those people *born in Oklahoma, no matter where they currently reside.* Section 1–315 contains no requirement that an applicant be born in Oklahoma, only certain time limits on residency in the State. Secondly, as will be shown in the text, a § 1–313 proceeding is within the contemplation of Comment *d* to the Restatement as to what falls within the definition of a judicial proceeding. It is a quasi-judicial proceeding before an administrative agency or officer.

7. *Pacific Employers Ins. Co. v. Adams,* 196 Okl. 597, 168 P.2d 105 (Okla.1946) (physician's report attached to pleading filed with State Industrial Court); *Hughes v. Bizzell,* 189 Okl. 472, 117 P.2d 763 (Okla.1941) (statements made at hearing before University Board of Regents to determine if discharge of employee· should be upheld); *Hammett v. Hunter,* 189 Okl. 455, 117 P.2d 511 (Okla.1941) (testimony given during child custody proceeding); *Sanford v. Howard,* 185 Okl. 660, 95 P.2d 644 (Okla.1939) (statements made during session of University Board of Regents concerning purported immoral conduct of employee); *Dickerson v. Crozier,* 128 Okl. 162, 261 P. 545 (Okla.1927) (statements made in complaint filed with city police court); Two divisions of the Court of Appeals have also held that statements made in citizen complaints filed with a police department, where the city has set up procedures to hear said complaints, are absolutely privileged under 12 O.S.1981,

§ 1443.1(A)(1). *Hennessee v. Mathis,* 737 P.2d 958 (Okla.Ct.App.Div. 3, 1987); *White v. Basnett,* 700 P.2d 666 (Okla.Ct.App.Div. 1, 1985); *See also Joplin v. Southwestern Bell Telephone Company,* 753 F.2d 808 (10th Cir.1983) (statement made in affidavit filed with court absolutely privileged pursuant to § 1443.1).

8. 12 O.S.1981, § 1443.1 provides as follows:
A. A privileged publication or communication is one made:
First. In any legislative or judicial proceeding or any other proceeding authorized by law;
Second. In the proper discharge of an official duty;
Third. By a fair and true report of any legislative or judicial or other proceeding authorized by law, or anything said in the course thereof, and any and all expressions of opinion in regard thereto, and criticisms thereon, and any and all criticisms upon the official acts of any and all public officers, except where the matter stated of and concerning the official act done, or of the officer, falsely imputes crime to the officer so criticized.
B. No publication which under this section would be privileged shall be punishable as libel.
In *Martin v. Griffin Television, Inc.,* 549 P.2d 85 (Okla.1976) we held certain portions of our State statutory libel and slander laws unconstitutional insofar as the legislative creation of presumed malice was concerned. 12 O.S.1971, § 1443, the predecessor to § 1443.1, was deemed one of the offending statutes in *Martin.* Section 1443.1 does not contain the same offending language as its predecessor.

9. The privilege has been deemed to apply in the context of administrative proceedings which are quasi-judicial in nature. *See e.g. Ascherman v. Natanson,* 23 Cal.App.3d 861, 100 Cal.Rptr. 656, 659–660 (1972) (hearing on physician staff privileges before board of directors of hospital district); *Rainer's Dairies v. Raritan Valley Farms,*

judicial function or duty has been described as follows, "[a] quasi-judicial duty is one lying in the judgment or discretion of an officer other than a judicial officer." [10] Clearly, in our situation the State Commissioner of Health or his delegate is acting in a quasi-judicial manner when he decides based on the material presented to him whether a delayed birth certificate will be filed under § 1–313 or rejected because of deficiencies in the evidence submitted. He exercises judgment or discretion in his determination of whether to file the delayed birth certificate on the information presented.

A further question arises here, however, because the specific ODH rule relating to delayed birth certificates does not appear to contemplate an actual hearing before the Commissioner, but only a submission of documentation. [11] The question arises because courts considering the issue of what constitutes a quasi-judicial proceeding have partially relied on the fact that a hearing was allowed at some point in the proceeding to give it sufficient likeness to a judicial proceeding to invoke the applicability of the absolute privilege. [12]

■ The most typical generic administrative proceeding falling under the umbrella of quasi-judicial would be one initiated and conducted pursuant to the requirements of an individual proceeding under the Oklahoma Administrative Procedures Act, 75 O.S.1981, §§ 309–323. In such a proceeding there would be little, if any, question that the proceedings are conducted in a manner like those before a court. Although the specific rules of ODH concerning delayed birth certificates do not appear to contemplate an individual proceeding or hearing following the requirements of the OAPA [13] we believe the general rules of ODH would, if properly invoked, provide an opportunity for an individual proceeding of the type governed by the OAPA. [14] The Rules of Practice, Oklahoma State Department of Health indicate that said rules are to be given a fair and impartial construction. [15] The rules also provide a mechanism to petition ODH for affirmative relief in the form of requesting an individual proceeding which shall contain a reference to the statute involved, the facts giving a right to relief and a statement as to the relief requested. [16] We believe these provisions of the ODH rules are broad enough to encompass a request by one seeking to obtain a delayed birth certificate such as the situation involved here.

■ Although in the normal course of events it may be that the determination is made simply on the documentation presented (we assume in most cases that would be all that was required for a determination to issue the certificate) there may be situations which would necessitate an individual

---

19 N.J. 552, 117 A.2d 889, 894 (1955) (proceedings before state director of milk industry); *Ramstead v. Morgan*, 219 Or. 383, 347 P.2d 594, 599 (1959) (attorney discipline proceedings); *Knox v. Dick*, 99 Nev. 514, 665 P.2d 267, 270 (1983) (county personnel grievance proceedings).

**10.** *Gray v. Board of County Commissioners*, 312 P.2d 959, 960 (Okla.1957).

**11.** ODH Rules and Regulations Governing Vital Statistic Registration, Part II(5)(c), *supra* note 2.

**12.** *Rainer's Dairies v. Raritan Valley Farms*, 117 A.2d at 894, *supra* note 9; *Ascherman v. Natanson*, 100 Cal.Rptr. at 659–660, *supra* note 9. *Cf. Engelmohr v. Bache*, 66 Wash.2d 103, 401 P.2d 346, 347–348 (1965). *Engelmohr* held that a study group appointed by the Securities and Exchange Commission to make a study and investigation of the rules governing national securities exchanges and associations did not

qualify as a quasi-judicial proceeding, nor did it exercise a quasi-judicial function.

**13.** In addition to the Rules of ODH on delayed birth certificates certain forms and the instructions thereto concerning such certificates do not appear to contemplate an evidentiary hearing, but only the submission of the required documentation. Copies of such forms and instructions were attached to one of Appellant's responsive pleadings to Moore's request for summary judgment.

**14.** The Rules of Practice, Oklahoma Department of Health pertinent hereto are found at 19 Okla. Gaz. 600–609 (1980).

**15.** Rules of Practice, Oklahoma Department of Health, Part IV(A), 19 Okla.Gaz. 603 (1980).

**16.** *Id.* at Parts II(G) and III(A), General Method of Operation and Procedure In Individual Proceedings, respectively.

proceeding, such as where the required minimum documentation, for whatever reason, cannot be acquired. In such a situation we have little doubt ODH would look favorably on a petition to initiate an individual proceeding like those governed by the OAPA and its own rules. Thus, not only is the decision of the Commissioner or his delegate in regard to issuance of a delayed birth certificate under § 1–313 a quasi-judicial function, the potentiality exists for an individual proceeding like that contemplated by the OAPA. We believe such factors necessitate a conclusion on our part that a quest for a delayed birth certificate under § 1–313 qualifies as a quasi-judicial proceeding and, thus, the situation here is subject to a determination of whether the absolute privilege applies in the circumstances of this case.[17] With the quasi-judicial issue behind us we turn to other arguments raised by Appellant for denial of the privilege.[18]

Appellant argues that the communication cannot be privileged because the parties knew it was false and because the filing of false information with ODH is a misdemeanor.[19] Appellant's argument in said regard is without merit. As far as the privilege concerns Moore and Haynes the facts revealed by the record conclusively show that *from their perspective* the communications between them and between Moore and Kilgore had some relation to a proposed proceeding that was contemplated in good faith and was under serious consideration. The rule of ODH concerning delayed birth certificates allows for the submission of one affidavit from someone having knowledge of the applicant's birth. Although there are questions here as to whether Haynes had any personal knowledge of Kilgore's birth and whether the affidavit was false and knowingly so Comment *a* to § 586 of the Restatement provides that the truth or falsity of the defamatory matter or even the knowledge of its falsity are irrelevant when the privilege does actually apply. This Court recognized the irrelevancy of these matters in our pronouncements in *Pacific Employers Ins. Co. v. Adams* and *Hughes v. Bizzel*,[20] where we ruled in regard to communications made within the context of judicial or quasi-judicial proceedings the privilege extends to communications regardless of whether they are true or false.

 Whether the filing of the affidavit would provide for separate criminal penalties or whether the conduct of either Moore or Haynes would subject them to professional discipline are distinctly separate questions. The privilege *does not* protect against such sanctions, just as the privlege would not protect an attorney from suffering professional discipline because of unethical conduct.[21] Nor would the privilege protect a witness or party from the sanction of a perjury conviction for false testi-

17. We should further note that even in those situations where a formal individual proceeding was not held final action of the Commissioner or the Board of Health adverse to an applicant seeking a delayed birth certificate, being quasi-judicial in nature, would constitute a final order appealable to a state district court under 12 O.S.1981, § 951 even assuming it would not strictly be subject to appeal under 75 O.S.1981, § 318 of the OAPA. Section 951 provides:
 A judgment rendered, or final order made, by any tribunal, board or officer exercising judicial functions, and inferior in jurisdiction to the district court, may be reversed, vacated or modified by the district court except where an appeal to some other court is provided by law. The simple fact is that whether or not a formal individual proceeding is actually held ODH is clearly empowered to hold a hearing in the matter and its decision of whether or not to issue the delayed birth certificate is quasi-judicial in nature.

18. We do not express a view in this case as to whether an agency adjudicative process *must by necessity* contain the exact same trial like mechanisms thought indispensable in valid judicial decisionmaking (e.g. right of cross-examination) for the absolute privilege to apply to statements made preliminary to the institution of a matter before an administrative agency.

19. 63 O.S.1981, § 1–1701 provides, among other things, for certain misdemeanor penalties for filing false information with ODH.

20. 168 P.2d at 107 and 117 P.2d at 765, *supra* note 7.

21. *Selby v. Burgess,* 289 Ark. 491, 712 S.W.2d 898, 900 (1986) (privilege does not immunize attorney from professional discipline).

mony in a courtroom or false swearing in an affidavit. Although the public policy served by the privilege immunizes defamers from a damage action, *it does not protect against the above referenced forms of censure or sanctions.*

The public policy fostering the privilege was stated by the Texas Court of Civil Appeals in a case extending it to communications made preliminary to a judicial proceeding as follows:

> Public policy demands that attorneys be granted the utmost freedom in their efforts to represent their clients. To grant immunity short of absolute privilege to communications relating to pending or proposed litigation, and thus subject an attorney to liability for defamation, might tend to lessen an attorney's efforts on behalf of his client. The conduct of litigation requires more than in-court procedures. An attorney must seek discovery of evidence, interrogate potential witnesses, and often resort to ingenious methods to obtain evidence; thus, he must not be hobbled by the fear of reprisal by actions for defamation. Yet this absolute privilege must not be extended to an attorney carte blanche. The act to which the privilege applies must bear some relationship to a judicial proceeding in which the attorney is employed, and must be in furtherance of that representation.[22]

A central question then is whether the alleged defamatory statements and the circumstances of publication were relevant or had some relation to a proposed proceeding, as opposed to whether the statement is true or false. As to the relevancy issue we have little trouble in ruling that the affidavit was relevant to the proceeding.[23] Clearly, an affidavit going to parentage is relevant under the ODH vital statistic rules for issuing a delayed birth certificate. Such an affidavit is one document that may be submitted and given consideration in the process. Thus, the relevancy requirement is met.[24] We also rule the record conclusively shows Moore was employed as an attorney by Kilgore for the purpose of assisting her in securing a delayed birth certificate and obtaining the affidavit was in furtherance of such representation from the perspective of Moore and Haynes.[25]

One must also determine if the circumstances surrounding the communication or publication of the alleged defamatory statement had some relation to the proposed proceeding. This inquiry narrows the scope of the privilege much more than the relevancy inquiry and turns to a large extent on determining to whom the publication was made.[26] A measure of protection is, thus, afforded to an alleged victim of defamation for publication to the public at large or to third parties unconnected with the proposed proceeding.[27] As

---

22. *Russell v. Clark,* 620 S.W.2d 865, 868 (Tex. Civ.App.1981).

23. The relevancy of the communication is a matter for determination by the court, as is the question of whether the communication was privileged or not by reason of its character or the occasion on which it was made. *Walker v. Majors,* 496 So.2d 726, 730 (Ala.1986).

24. Courts have taken a rather liberal view in regard to the relevancy requirement and doubts are resolved in favor of relevancy. *Id.* at 730; *Barnett v. Mobile County Personnel Board,* 536 So.2d 46, 52 (Ala.1988).

25. Although the record appears to show Moore was essentially assisting Kilgore *pro bono* it is clear from the record an attorney-client relationship existed between the two relative to the birth certificate quest. Clearly, Moore was acting in the capacity of an attorney in assisting

Kilgore with advice on how to secure the certificate and in procuring the affidavit.

26. Whether the alleged defamatory statement itself (i.e. its content) is relevant to a proposed proceeding is not the same question as whether the *occasion* of utterance should be considered within the privilege. To determine the latter question a detailed analysis of the facts and circumstances surrounding its publication, with a particularized inquiry to whom it was published is required. *See Asay v. Hallmark Cards, Inc.,* 594 F.2d 692, 697–698 (8th Cir.1979).

27. The privilege may be lost by unnecessary or unreasonable publication to one for whom the occasion is not privileged. *Id.* at 698. Thus, unnecessary publication to the news media may result in loss of the privilege, as well as publication to those wholly unconnected with the judicial process. *See Sullivan v. Birmingham,* 11 Mass.App. 359, 416 N.E.2d 528, 530–531 (Mass. App.1981).

to Moore and Haynes neither published the alleged offending affidavit or its contents to anyone unassociated with the proposed proceeding. Moore, as attorney, prepared the affidavit, sent it to Haynes, a potential witness or affiant, who returned it to Moore. Moore then gave it to Kilgore. As to these two Appellees there was no dissemination outside the normal sphere of those that would be expected to be involved in preparation for the proceeding at issue. Thus, up to this point in the inquiry the actions of Moore and Haynes fall within the privilege.

Appellant further argues the communications at issue cannot be privileged because the proposed proceeding was not contemplated in good faith and under serious consideration. To support this theory she argues good faith is absent or, at least, subject to dispute because the affidavit's contents are false and it is antithetical for one to contemplate a proceeding in good faith while at the same time relying on a false affidavit to support the relief sought by the proceeding. Secondly, Appellant asserts there is a factual issue whether the proceeding was under serious consideration, primarily relying on the fact the record contains no evidence the proceeding was initiated. We believe Appellant's arguments are without merit, as will be explained below.

▆▆▆▆ There is no material factual issue in this record subject to genuine dispute [28] from the perspective of Moore that a proceeding was seriously contemplated under § 1–313 and that the affidavit was procured for potential use therein subject to the evidentiary requirements of ODH. True, there is conflicting evidence as to whether the contents of the affidavit were false and whether Moore had knowledge of the falsity. However, the only conclusion we can reach from this record is that Kilgore came to Moore requesting assistance to obtain a birth certificate, that he agreed to assist her and as part of that assistance he procured the affidavit for use before ODH, whether he knew it was false or not. There is simply no evidence in the record to rebut these facts and the record conclusively shows the purpose of his endeavors on behalf of Kilgore was to procure the birth certificate or assist her in initiating a proceeding to do so.

▆▆▆▆ As to Haynes the record also shows that his dealings with Moore in regard to the affidavit were in furtherance of the contemplated effort to obtain the birth certificate. Although he may have been negligent by his admitted failure to read the affidavit, such conduct does not take him outside the privilege because the affidavit itself and his role in executing it were conclusively shown to be in furtherance of a contemplated proceeding to obtain a birth certificate. Further, there is no evidence he published the affidavit outside the sphere of those connected with the proposed proceeding. He merely signed it and returned it to Moore, Kilgore's attorney. That the affidavit itself was false and knowingly so *for the purposes of determining whether the privilege applies* in relation to Moore and Haynes, on the present record, is irrelevant, as we have previously noted. When the privilege applies it protects knowing and potentially damaging falsehoods. As long as the speaker or writer of the defamatory communication has an actual subjective good faith belief that litigation is seriously contemplated the privilege attaches whether or not he has a good faith belief in the truth of the communication.[29] It must be re-

---

**28.** Summary judgment is appropriate when there is no substantial controversy as to any material fact and it appears one party is entitled to judgment as a matter of law. *Sellers v. Oklahoma Publishing Company,* 687 P.2d 116, 120 (Okla.1984).

**29.** *See Fuhrman v. California Satellite Systems,* 179 Cal.App.3d 408, 231 Cal.Rptr. 113, 119, fn. 5 (1986). As stated in *Fuhrman:*

It is important to distinguish between the lack of a good faith intention to bring suit and publications which are made without a good faith belief in their truth, i.e., malicious publications. The latter, when made in good faith anticipation of litigation, are protected as part of the price paid for affording litigants the utmost freedom of access to the courts. This policy consideration is not advanced, however, when the person publishing an injurious falsehood is not seriously considering litigation. In such a case, the

membered that the purpose of the privilege is not to protect those that otherwise would be liable for defamation, but to lessen the chilling effect on those who seek to utilize the judicial process to seek relief. Necessarily then no remedy is provided for some injuries caused by conduct subject to the absolute privilege.

■ As to Moore and Haynes the subjective component of the test is met and is unrebutted by Appellant. This is not to say that objective evidence or the circumstances evident in any particular case would not be able to overcome a defendant's testimony that litigation was under serious consideration.[30] However, in the case of Moore and Haynes there is no such evidence in the record. Summary judgment was, thus, proper as to these two Appellees in regard to Appellant's defamation claim.

■ On the present record we also hold Kilgore was entitled to summary judgment. Although no deposition of Kilgore is contained in the record the evidentiary submissions before this Court, which were before the trial court, show there is no genuine dispute as to whether Kilgore was seriously and in good faith contemplating initiating a proceeding to obtain a delayed birth certificate. Moore, throughout his deposition, testified that the quest for the birth certificate, including his procurement of the offending affidavit, was the purpose of his relationship with Kilgore. Appellant's own deposition indicates Kilgore told her she was trying to get a birth certificate. This evidence stands unrebutted by Appellant.

The evidence also conclusively shows Kilgore did not step out of the shelter of the absolute privilege by the circumstances surrounding her publication of the affidavit or its contents. The record indicates it or its contents were revealed by Kilgore to relatives to determine if the contents were true.[31] In regard to such publication Kilgore would be in much the same position as a lawyer who was conducting preparatory conferences to determine the necessary facts prior to bringing a lawsuit.[32] Attor-

publication has no "connection or logical relation" to an action and is not made "to achieve the objects" of any litigation.... No public policy supports extending a privilege to persons who attempt to profit from hollow threats of litigation. (citation omitted) *Id.*

**30.** Where there is no indication that an attorney seriously contemplated a judicial proceeding in good faith, but only threatened litigation if the purportedly defamed individual engaged in certain future conduct the absolute privilege would not apply. *Smith v. Suburban Restaurants, Inc.,* 374 Mass. 528, 373 N.E.2d 215, 218 (1978). *Fuhrman, supra* note 29, also determined factual questions were left unresolved as to whether letters were published in good faith and serious contemplation of litigation where they were sent to thousands of microwave television signal recipients alleged to be receiving signals without paying for them. *Id.* 231 Cal Rptr. at 119.

**31.** Attached to Kilgore's motion for summary judgment was her *unsigned/unverified* affidavit stating to the effect she published the offending affidavit or its contents to relatives to question them concerning the validity of the affidavit in preparation for her quest to procure the birth certificate. Appellant asserts her motion was a nullity and should have been denied because of this flaw in the affidavit attached to her motion. We find this argument to be without merit. The properly reviewable record, which included the deposition testimony of Appellant, shows she had a conversation with Kilgore in which Kilgore told her the publications were in an effort to determine the truthfulness of the offending affidavit to see whether it was worthy of use in the contemplated proceeding to procure a birth certificate. Appellant never rebutted this evidence with anything that could be relied on to defeat summary judgment in favor of Kilgore. Nothing in the record indicates Kilgore's purpose was to defame Appellant, rather than determining the truth of the affidavit for potential use in the contemplated proceeding. Thus, the fact the motion of Kilgore submitted did contain a flawed affidavit is of no consequence because other parts of the record supported a ruling of summary judgment in her favor.

**32.** As set forth in note 25 *supra* the record indicates Moore was essentially acting in a *pro bono* capacity in advising Kilgore and in securing information for her use before ODH. As such she was the one that ultimately would be submitting to ODH the necessary papers for filing the delayed birth certificate. We perceive no problem in this case from Kilgore doing some of the investigation herself. Courts have recognized at least the potential for application of the privilege to a litigant who was himself seeking information by "witness interrogatories" sent in the form of letters to potential witnesses. *See Asay v. Hallmark Cards, Inc.,* 594 F.2d 692, supra note 26.

neys and parties many times must conduct themselves in such a manner to comply with the strictures of 12 O.S.Supp.1988, § 2011. Section 2011, in part, provides that the signature of an attorney or party on a submission in a judicial proceeding constitutes a certificate by him that the contents thereof are well grounded in fact and it requires a reasonable inquiry to be made to determine whether any such factual assertion is so grounded. In the circumstances of this case the facts reveal Kilgore published the affidavit or its contents to relatives who might have been able to shed some light on the veracity of the affidavit in an effort to determine if it was worthy of use in a delayed birth certificate proceeding she was seriously contemplating initiating. In such a situation we perceive no reason to afford her less protection than either Moore or Haynes or an attorney who might be required to conduct a similar investigation. Thus, summary judgment in favor of Kilgore was properly granted.

■ We have little problem disposing of Appellant's argument that even if a privilege does apply to bar her defamation claim, her cause for intentional infliction of emotional distress should survive because no specific request was made for judgment in regard to said claim. Although no specific request appears in the record for summary judgment in regard to this claim it is clear that Appellant's alternative theory of intentional infliction of emotional distress was based on the exact same factual assertions as her claim for defamation. It is equally clear from reviewing the record that Appellees were requesting summary judgment in their favor not only in regard to Appellant's defamation claim, but in regard to her alternative claim of intentional infliction of emotional distress. Very simply, the motions for summary judgment were not couched in partial terms, but requested judgment in their favor as a matter of law based on the absolute privilege. Our task is, thus, to determine whether the absolute privilege is also a bar to an action based on intentional infliction of emotional distress, as well as to a defamation claim.

■ Courts considering the matter have determined the privilege bars not only the defamation action, but a cause for intentional infliction of emotional distress.[33] We join those jurisdictions that have held the privilege applies to bar a claim for intentional infliction of emotional distress, as well as the defamation claim. For us to rule otherwise would effectively emasculate the privilege, the primary rationale given by those courts holding the privilege also bars the distress claim. Thus, when the claim for intentional infliction of emotional distress is based on the same factual underpinnings as a defamation claim for which the privilege applies, a claim for intentional infliction of emotional distress is also barred by the reach of the absolute privilege.

■ One final issue is presented. That is whether the Court of Appeals correctly found Appellant failed to preserve in her petition in error any issue in regard to her declaration of heirs claim. Examination of the arguments presented in the petition in error and in Appellant's petition for certiorari to this Court show the decision of the Court of Appeals was correct. The argument in the certiorari petition is that an allegation in the petition in error that the evidence "shows a substantial controversy of material fact necessitating a trial" was sufficient to preserve the issue of whether the trial court properly dismissed the action for determination of heirs. We believe such allegation was insufficient to preserve claim of error in said regard. The allegation is nothing more than the same type of "shotgun" approach this Court has indicated is insufficient to preserve error. Rule 1.16(A), Rules of Appellate Procedure in Civil Cases, 12 O.S. Supp.1988, Ch. 15, App. 2. Rule 1.16(A) states in part, "[a]llegations of error, general in nature (conclusional) or 'shotgun' (all encompassing) in effect such as: '[d]ecision is contra to law and evidence'

**33.** *Ribas v. Clark,* 38 Cal.3d 355, 212 Cal.Rptr. 143, 696 P.2d 637, 643 (1985); *Sullivan v. Birmingham,* 416 N.E.2d 528, 533–534, *supra* note 27; *Lerette v. Dean Witter Organization, Inc.,* 60 Cal.App.3d 573, 131 Cal.Rptr. 592, 595–596 (1976).

will not suffice." Failure to raise an issue of error in the petition in error is fatal to its consideration on appeal.[34] We, thus, affirm the decision of the Court of Appeals in regard to its decision to not reach the merits of arguments made as to error concerning Appellant's determination of heirs claim.

The opinion of the Court of Appeals, Oklahoma City Divisions is VACATED and WITHDRAWN FROM PUBLICATION. The judgment of the trial court is AFFIRMED.

HARGRAVE, C.J., OPALA, V.C.J., and SIMMS and SUMMERS, JJ., concur.

HODGES, J., concurs in result.

KAUGER, J., concurs in part, dissents in part.

DOOLIN and ALMA WILSON, JJ., dissent.

DOOLIN, Justice, with whom KAUGER and ALMA WILSON, Justices, joins; dissenting:

The matter before us today is properly defined by the majority. If the application made to file a delayed certificate of birth under 63 O.S.1981 § 1–313[1] is a judicial proceeding or "other" proceeding authorized by law as used in 12 O.S.1981, § 1443.1,[2] there is little doubt that the majority correctly holds that the proceeding under 12 O.S.1981, § 1443.1 applies to quasi judicial proceedings.

To be terse and to the point, I do not believe the action or application is judicial, quasi-judicial, or any other proceeding authorized by law, as that term is used in 12 O.S. § 1443.1. Delayed application for registration of a birth is purely administrative and ministerial in nature. No hearing or proceedings under § 1443.1 are contemplated or guaranteed. In the case at bar, no hearing was had, no evidence necessary to a proceeding was given, no opportunity

for cross-examination was contemplated or guaranteed. The application phase of late registration of birth is not subject to § 1443.1.[3]

The majority cites the Restatement (Second) of Torts §§ 586, 587 and 588. I would suggest that the Restatement (Second) of Torts § 586 Comment *e* in dealing with a purely administrative proceeding, which I believe delayed registration of birth to be, states the gist of my argument:

> As to communications preliminary to a proposed judicial proceeding the rule ... applies only when the communication has some relation to a proceeding that is contemplated in good faith and under serious consideration. *The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered.* [emphasis supplied].

No further action has been taken by the plaintiff to date of this appeal.

Comment *a* to § 586 of the Restatement Second, adopted by the majority, provides:

> The privilege stated in this section is based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients. Therefore the privilege is absolute. *It protects the attorney from liability in an action for defamation irrespective of his purpose in publishing the defamatory matter, his belief in its truth, or even his knowledge of its falsity.... The publication of defamatory matter by an attorney is protected not only when made in the institution of the proceedings or in the conduct of litigation before a judicial tribunal, but in conferences and other communications preliminary to the proceedings.* The institution of a judicial proceeding includes all pleadings and affidavits necessary to set the

---

**34.** *Timmons v. Royal Globe Insurance Company,* 653 P.2d 907, 912 (Okla.1982).

**1.** See footnote 1 of the majority opinion.

**2.** See footnote 8 of the majority opinion.

**3.** Footnote 7 of the majority opinion cites examples of proceeding, judicial or quasi judicial in nature where privilege may be properly granted.

956

judicial machinery in motion..... [Emphasis supplied.]

The above Comment requires no ethical consideration on behalf of an attorney. It is contra to his oath[4] and says in essence: "You may know the statement is *untrue, false and unethical*—but under § 1443.1 go ahead. It is absolutely protected."

The legislature by enactment of 12 O.S. 1981, § 1443.1, has *no* power to abrogate the powers granted by Articles IV and VII of the Oklahoma Constitution to the Supreme Court. Developing, rule making, and fostering and maintaining in attorneys engaged in the practice of law, high ideals of integrity are the sole function of this Court. Nor should the recommendation of the Restatement Committee be allowed to undermine the integrity of the Bar of Oklahoma and this Court.

Another theory or vice of the majority opinion, regardless of the acceptance of the administrative argument proceeding, remains.

The evidence of Dr. Haynes and the lawyer Moore appears to stand at opposite poles. The affidavit prepared by the lawyer, the narrative of the meeting between the doctor and lawyer, is plainly set out by the majority. We do *not* challenge it. The conclusion I would draw differs radically. The hiatus or lacuna missing is a fact determination from evidence taken and given during a hearing or proceeding in defamation. The majority to me states a missing factor when it says:

A further question arises here, however, because the specific ODH (Okla. Dept. of Health) rule relating to delayed birth certificates *does not* appear to contemplate an *actual hearing* before the Commissioner, *but only* a submission of documentation. [emphasis supplied].

The attempt to gloss over the failure of conducting a proceeding as contained in the majority opinion hasn't convinced me.

Cases are legion which require an adversarial proceeding or hearing to establish an evidentiary fact. The instant case should require such a proceeding or hearing between the doctor and lawyer to establish the thrust and truth of their meeting. In the case of *McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583, 587 (Okl.1981), we opined:

"... and if there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer conduct, then what is reasonable is always a question to be determined by the trier of fact....."

There remains a material fact in the determination of the truthfulness of the positions of the doctor and lawyer.

The majority opinion points out that no application of 63 O.S.1981, § 1–313 and § 1–315 has been made in a proceeding or hearing before the Oklahoma Department of Health. The majority further states in speaking of 12 O.S.1981, § 1443.1 and the instant case that ... "The situation here does not fall within the statute's protection because the communications involved were all made *preliminary* to a *proposed* proceedings the record fails to disclose has ever been instituted." [Emphasis Supplied]. I conclude the undenied fact that no certificate of birth has been applied for becomes important, if not a deciding criterion.

No precedential opinion on the issue presented exists from this Court; however, in 23 ALR 4th 932 there is collected an annotation from Federal and State Courts on the subject. The discussion commences with the usual general statement, to-wit:

4. "I do solemnly swear that I will support, protect and defend the Constitution of the United States, and the Constitution of the State of Oklahoma, and that *I will do no falsehood, or consent that any may be done in court,* and if I know of any I will give knowledge to the judges of the court, or some one of them, that it may be reformed; *I will not wittingly, willingly or knowingly promote, sue or procure to be sued, any false or unlawful suit, or give aid or consent*

*to the same;* I will delay no person for lucre or malice, but will act in the office of attorney of this court according to my best learning and discretion, *with all good fidelity* as well to the court as to my client, so help me God." See also the preamble of the Rules Creating and Controlling the Oklahoma Bar Association, 5 O.S.A. Ch. 1, App. 1, p. 95 and Art. I, Sec. 1 and 2 of 5 O.S.A. Ch. 1, App. 1 of such Rules.

"Where judicial proceedings are not pending, comment e limits the application of the privilege to communications having a relationship to proposed judicial proceedings which are contemplated seriously and in good faith. Comment e states that the absolute privilege does not apply where the institution of judicial proceedings is not seriously considered."

However, it follows with this observation: "... some courts have limited the scope of the privilege to defamatory statements uttered by an attorney after the formal commencement of judicial proceedings, and have held that the extrajudicial statements of counsel prior to the institution of litigation are not within the scope of the privilege relating to statements uttered in the course of judicial proceedings (§ 3[b], infra)." [5]

Cases support the view that ... "statements of attorneys published in the course of judicial proceedings *did not* apply to the statements of counsel which were uttered before the formal commencement of judicial proceedings, in the course of preparation or investigation related thereto, to persons other than the defamed party's agents." The lawyer and doctor are hardly plaintiff/Kirschstein's agents.

Admittedly no "pat horse" case can be found in this annotation. These cases, pro and con, are concerned with private news conferences, letters of request for statments, demand letters, letters to escrow agents, and letters to witnesses, etc.

I concur with the majority disposition of the claim of Kirschstein to determine heirs. I would deny privilege and remand for further proceedings.

---

**5.** Pro: *Timmis v. Bennett,* 352 Mich. 355, 89 N.W.2d 748 (1958); *Kenney v. Cleary,* 47 App. Div.2d 531, 363 N.Y.S.2d 606 (1975); *Rosen v. Brandes,* 105 Misc.2d 506, 432 N.Y.S.2d 597 (1980); *Kent v. Connecticut Bank & Trust Company,* 386 So.2d 902 (Fla.1980), and *Green Acres Trust v. London,* 141 Ariz. 609, 688 P.2d 617 (1984). Con: *Ascherman v. Natanson,* 23 Cal. App.3d 861, 100 Cal.Rptr. 656 (1972); *Lerette v. Dean Witter Organization, Inc.,* 60 Cal.App.3d 573, 131 Cal.Rptr. 592 (1976); *Larmour v. Campanale,* 96 Cal.App.3d 566, 158 Cal.Rptr. 143 (1979); *Johnson v. Cartwright,* 355 F.2d 32 (applying Iowa law) (1966); *Sriberg v. Raymond,* 370 Mass. 105, 345 N.E.2d 882 (1976) and others. See 23 A.L.R. 4th 932, 939.