ROBERT L. SULLIVAN, D.D.S., P.C., & another[1] *vs.*
BRIAN D. BIRMINGHAM
A. RONALD GRIMM *vs.* THOMAS F. LARKIN,
individually and as administrator.

Hampshire.  October 16, 1980, December 12, 1980. — February 13, 1981.

Present: GREANEY, ROSE, & PERRETTA, JJ.

*Libel and Slander. Medical Malpractice*, Complaint, Ad damnum.
*Pleading, Civil*, Complaint. *Abuse of Process. Negligence*, Pleading
in civil action. *Attorney at Law*, Canons of ethics.

Statements in medical malpractice complaints of ad damnum amounts,
which were alleged to be defamatory, were pertinent to the judicial
proceedings notwithstanding the statutory prohibition set out in G. L.
c. 231, § 60C, and were, therefore, privileged.  [361-365]

Allegations in two actions for libel that the defendants had included de-
famatory statements in medical malpractice complaints in order to at-
tract newspaper publicity and that newspaper articles containing the
statements were subsequently published were not sufficient to over-
come the absolute privilege applicable to statements made in the
course of judicial proceedings where there were no allegations of direct
publication by the defendants other than the mere filing of the com-
plaints.  [365-366]

The privileged nature of statements made in a complaint barred any
civil liability as to such statements based on allegations that the state-
ments constituted abuse of process, libel, negligence, and intentional
infliction of emotional distress.  [367-368]

The Canons of Ethics and Disciplinary Rules merely provide standards of
professional conduct of attorneys and the violation of those standards
is not ground for civil liability in the absence of an independent cause
of action.  [368-369]

Two CIVIL ACTIONS commenced in the Superior Court De-
partment on July 9, 1979, and July 30, 1979, respectively.
Motions to dismiss were heard by *Smith*, J.

[1] Robert L. Sullivan.

*Richard M. Howland* for the plaintiffs.
*Anthony Tarricone* for Thomas F. Larkin.
*Paul T. Ford* for Brian D. Birmingham.

PERRETTA, J.   Because these separate appeals from judgments of dismissal under Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974), present the identical issue, whether the wrongful inclusion of an ad damnum amount in a medical malpractice complaint[2] gives rise to a cause of action by the health care provider, we treat them together.   We affirm the judgments of dismissal.

The plaintiffs specifically alleged in their complaints that the inclusion of an ad damnum amount constituted abuse of process, libel, and negligence; in their briefs they have argued that on the facts set out in their complaints relief could be also granted for violation of G. L. c. 93A and of the Canons of Ethics and Disciplinary Rules,[3] S.J.C. Rule 3:22, 359 Mass. 807 (1972), as well as for the intentional infliction of emotional distress.   In reaching our conclusion that the judgments of dismissal must be affirmed, we have considered the factual allegations as they pertain to the defendants as well as to their attorneys, who prepared and signed the malpractice complaints but who were not named as defendants herein.   See *Nader* v. *Citron*, 372 Mass. 96, 104 (1977). See also Mass.R.Civ.P. 15 and 19, 365 Mass. 761, 765 (1974).

The plaintiffs alleged that an ad damnum amount was maliciously included in the malpractice complaints with the intention to injure them and to compel the settlement of unwarranted and disputed claims, that it was included with the intention that it would result in newspaper publication of the complaints, and that the complaints were negligently

---

[2] General Laws c. 231, § 60C, inserted by St. 1975, c. 362, § 5, provides: "No writ or complaint for malpractice, error or mistake against a provider of health care shall contain an ad damnum or monetary amount claimed against such defendant."

[3] Particularly, DR 1-102(A)(5) and (6), 6-101(A)(1) and (2), 7-101(A)(1), 7-102(A)(1), (7) and (8), and 7-106(A).

prepared in breach of a duty imposed by c. 231, § 60C. The defendant Birmingham set out the defense of absolute privilege as the basis for his motion under rule 12(b)(6). The defendant Larkin stated in his like motion that the supporting reasons were recited in an accompanying memorandum of law, which has not been included in the record appendix; however, it has not been suggested that the defendant Larkin failed to assert the absolute privilege before the judge ruling on his motion or that he otherwise waived the defense he now presents. Cf. *Rozene* v. *Sverid,* 4 Mass. App. Ct. 461, 465 (1976). Contrast *Stanton·Indus., Inc.* v. *Columbus Mills, Inc.,* 4 Mass. App. Ct. 793, 794 (1976).[4]

The questions thus raised by the motions to dismiss are (1) whether the statements, the ad damnum amounts, were absolutely privileged and (2) if so, what actions does this defense bar?

1. *Availability of the Defense of Absolute Privilege.*

The doctrine of absolute privilege applies to defamatory statements made "in the institution or conduct of litigation or in conferences and other communications preliminary to litigation." *Sriberg* v. *Raymond,* 370 Mass. 105, 109 (1976). *Sriberg* v. *Raymond,* 544 F.2d 15, 16 (1st Cir. 1977). See Restatement (Second) of Torts §§ 586, 587 (1977). The immunity provided by this doctrine rests upon long recognized policy considerations. See *Sriberg* v. *Raymond,* 370 Mass. at 109, quoting Chief Justice Shaw in *Hoar* v. *Wood,* 3 Met 193, 197-198 (1841). See also Restatement (Second) of Torts § 586, Comment a (1977) ("The privilege stated in this Section is based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients"), and § 587, Comment a (1977) ("The privilege stated in this Section is based upon the public interest in according to all men the utmost

---

[4] The defense of absolute privilege was here properly asserted by a motion to dismiss under rule 12(b)(6). See *Ginsburg* v. *Black,* 192 F.2d 823, 825 (7th Cir. 1951), cert denied, 343 U.S. 934 (1952). See also Smith & Zobel, Rules Practice § 12.13 (1974).

freedom of access to the courts of justice for the settlement
of their private disputes"). The privilege, however, cannot
be exploited as an opportunity to defame with immunity,
because it is available only when the challenged remarks are
relevant or pertinent to the judicial proceedings. *Mezullo
v. Maletz,* 331 Mass. 233, 236 (1954). *Seelig v. Harvard
Coop. Soc.,* 355 Mass. 532, 538 (1969). *Sriberg v. Ray-
mond,* 370 Mass. at 109. Moreover, the privilege may be
lost by unnecessary or unreasonable publication to one for
whom the occasion is not privileged. *Brown v. Collins,* 402
F.2d 209, 213-214 (D.C. Cir. 1968). *Sriberg v. Raymond,*
544 F.2d at 16-17. *Asay v. Hallmark Cards, Inc.,* 594 F.2d
692, 698 (8th Cir. 1979). Restatement (Second) of Torts
§§ 604, 605 (1977).[5] These limitations on the availability of
the privilege do not run counter to the policy upon which
absolute privilege rests. As pointed out in *Asay v. Hallmark
Cards, Inc.,* 594 F.2d at 698: "This approach accords with
the public policy recognizing the necessity for privilege for
statements related to judicial proceedings. Allowing
defamation suits for communications to the news media will
not generally inhibit parties or their attorneys from fully in-
vestigating their claims or completely detailing them for the
court or other parties. Also, the important factor of judicial
control is absent."

a. *Relevance and pertinence of the ad damnum clause.*

"[W]ords spoken by a witness in the course of judicial
proceedings which are pertinent to the matter in hearing
are absolutely privileged, even if uttered maliciously or in
bad faith," *Mezullo v. Maletz,* 331 Mass. at 236, and "[t]he
words 'pertinent to the proceedings' are not to be construed
narrowly," nor according to evidentiary rules as to admissi-
bility. *Aborn v. Lipson,* 357 Mass. 71, 73 (1970). Restate-
ment (Second) of Torts §§ 586, Comment c; 587, Comment c;

---

[5] It is not crucial for determination of this issue whether the privilege
claimed is absolute or conditional because, as noted in *Sriberg v. Ray-
mond,* 544 F.2d at 17, "that is not the point. We are concerned here, as
there, with whether the privilege attached at all, not with what was its
extent."

588, Comment c (1977). Prosser, Torts § 114 (4th ed. 1971). See also *Thornton* v. *Rhoden,* 245 Cal. App. 2d 80, 85-94 (1966); *Seltzer* v. *Fields,* 20 App. Div. 2d 60, 61-63 (1963), aff'd 14 N.Y.2d 624 (1964). Applying these principles to the remarks in question, it cannot be disputed that the amount of damages claimed is "pertinent to" an action in malpractice. The true question is whether words which were otherwise pertinent to the proceedings lost their privileged character by reason of the statutory prohibition set out in c. 231, § 60C.

Section 60C was enacted "as part of a comprehensive package designed to ensure the continued availability of medical malpractice insurance at a reasonable cost." *Paro* v. *Longwood Hosp.,* 373 Mass. 645, 647 (1977). *Aker* v. *Pearson,* 7 Mass. App. Ct. 552, 555 (1979). The Legislature has prohibited the inclusion of an ad damnum amount in a medical malpractice complaint because a specific request could improperly affect the amount of damages ultimately awarded by a jury on the claim. See Interim Report of the Special Commission on Medical Professional Liability Insurance, 1976 House Doc. No. 4380, at 6.[6] Prior to the enactment of § 60C, it was possible for the jury to learn the amount of damages claimed in the complaint.[7] See *Goldstein* v. *Gontarz,* 364 Mass. 800, 815 n.15 (1974), which states:

---

[6] "The Special Commission is acutely aware that juries have awarded very high damages to plaintiffs in some malpractice cases. The Special Commission wishes to compile data based only on the Massachusetts experience and, to the extent possible, determine for itself the various elements of damage which contributed to the final award or out of court settlement. It is well known that damage awards or settlements can include, among other things, compensation for lost earning capacity, compensation for the loss of physical capacity, compensation which will reimburse the plaintiff for continuing care necessitated by the act of malpractice, damages for conscious pain and suffering, as well as punitive damages in highly unusual cases. The survey of past experience should provide us with some help in this regard. If it does not, it may be that we should recommend legislation which would require that each element of damages awarded by juries should be separately identified."

[7] An ad damnum clause is proper in other types of actions but its inflation or exaggeration is tempered by Mass.R.Civ.P. 11(a), 365 Mass. 753

"'In this Commonwealth from time immemorial, in opening, the pleadings have been read to the jury. Howe's Practice (1834) 252. Colby's Practice (1848) 238. At the close of a trial, the writ and declaration and answers in their final form customarily go to the jury.' *Woodworth* v. *Fuller,* 235 Mass. 443, 446 (1920). Although including the ad damnum in the writ may be necessary for various procedural purposes, there seems to be little justification, besides history, for disclosing the ad damnum to the jury. It does not in fact limit the amount of recovery and may be increased by amendment even after the verdict. [Citations omitted.] We agree with recent suggestions that in most cases where the damages are unliquidated and rest with the jury, the trial judge would be better advised to withhold the ad damnum from the jury than to read the figure and then attempt to negate its effect with an instruction. See Hennessey, Procedure and Evidence — Suggestions for Change, 50 Mass.L.Q. 329, 332-333 (1965)."

We read § 60C as a legislative guarantee that the amount claimed or sought will not be disclosed to the jury. This construction of § 60C is consistent with the purposes and goals of the "comprehensive package designed" by the Legislature, namely, to protect health care providers not against injury to their sensibilities and professional reputations but against the escalating cost of malpractice insurance premiums. In our view, to conclude that the ad damnum amounts lost their relevance and pertinence, within the broad meaning given those words when used in the context of the privilege and not in the evidentiary sense, on the sole basis that their inclusion in the complaints was pro-

(1974). See *National Assn. of Govt. Employees, Inc.* v. *Central Bdcst. Corp.,* 379 Mass. 220, 233 n.18 (1979).

hibited by statute would be to conclude that § 60C is of greater public importance than the absolute privilege. The logically and functionally disparate purposes served by the privilege on the one hand and the statute on the other do not support such a conclusion. To exalt § 60C over the absolute privilege would be an unnecessary and serious diminution of it. We conclude that the statements were pertinent to the proceedings notwithstanding § 60C.

b. *Unnecessary and unreasonable publication of the ad damnum.*

"Where a publication is privileged by reason of the circumstances and occasion on which it is made, the privilege may be so far abused by an unnecessary and excessive publication that the immunity is lost, i.e., the defendant has gone beyond the area allowed by the privilege and is no longer protected. Thus, if an occasion is privileged as to communications between certain parties, the privilege is lost if the communication is made in such a manner as to unnecessarily and unreasonably publish it to others, as to whom the occasion is not privileged." 1 Harper & James, Torts 455 (1956). *Galvin* v. *New York, N.H. & H. R.R.*, 341 Mass. 293, 297 (1960). See note 6, *supra*. See also *Brown* v. *Collins*, 402 F.2d at 213-214; *Asay* v. *Hallmark Cards, Inc.*, 594 F.2d at 698.

The plaintiffs alleged in their complaints that "[a]s a direct and intended result of defendant having filed and published the complaint containing ad damnum of $400,000.00 [and $600,000.00] . . . in violation of M. G. L. c. 231, § 60C . . . a newspaper article further publishing and relating said ad damnum appeared." These allegations do not inferentially or directly show that the defendants engaged in unnecessary and unreasonable publication of the ad damnum amounts. While the mere filing of a complaint constitutes a form of publication, that act can hardly be deemed unnecessary and unreasonable. Were we to conclude otherwise, we would effectively abolish the privilege as it relates to pleadings. Therefore, we confine our consideration to those portions of the complaints which allege, in effect, that

the ad damnum amounts were deliberately inserted to attract the interest of the news media and thereby cause an unnecessary and unreasonable publication. The plaintiffs allege no direct publication by the defendants other than the mere filing of the complaints. Contrast *Brown* v. *Collins*, 402 F.2d at 211; *Sriberg* v. *Raymond*, 544 F.2d at 16; *Asay* v. *Hallmark Cards, Inc.*, 594 F.2d at 696, and cases collected at 697. The allegations are insufficient. The mere making of relevant and pertinent statements on a privileged occasion with the hope that the news media will be enticed to make further publications does not constitute a "communication . . . made in such a manner as to unnecessarily and unreasonably publish it to others, as to whom the occasion is not privileged." 1 Harper & James, *supra*. There must be some act by the defendant other than the utterance in the first instance with the intent that it be further communicated. Were we to conclude otherwise parties and attorneys could be called upon to demonstrate that allegations in pleadings were not only pertinent but also that they were included for a legitimate purpose. Unlike the situation in *Asay* v. *Hallmark Cards, Inc.*, 594 F.2d at 698, where there was direct communication with the news media, the possibility here presented would "inhibit parties or their attorneys from fully investigating their claims or completely detailing them for the court or other parties." *Id.* at 698. This is the very thing against which the privilege is directed. "The public interest in the untrammeled flow of communication in connection with judicial proceedings requires freedom from inquiry into the propriety of, as well as freedom from civil liability for, such utterances." *Sriberg* v. *Raymond*, 544 F.2d at 16.

We are not insensitive to the plaintiffs' concerns but our conclusion that these statements are absolutely privileged is based upon a recognition of the public interest at stake and the availability of judicial controls to safeguard against abuse of the absolute privilege in judicial proceedings.

2. *Actions Barred by the Defense.*

It is established that the privileged nature of the statements provides a complete defense to the plaintiffs' claims of libel and intentional infliction of emotional distress, the latter tort requiring that a defendant's actions be "without . . . privilege." See *George* v. *Jordan Marsh Co.*, 359 Mass. 244, 255 (1971); *Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 144 (1976). But we go further to conclude that the policy underlying the absolute privilege also immunizes the defendants from any civil liability based on the allegations in these complaints.[8] "The rule exists, not because the malicious conduct of such persons ought not to be actionable, but because, if their conduct were actionable, actions would be brought against them in cases in which they had not spoken falsely and maliciously; it is not a desire to prevent actions from being brought in cases where they ought to be maintained, but the fear that if the rule were otherwise, numerous actions would be brought against persons who were acting honestly in the discharge of a duty. It may be urged, of course, that a false statement, known to be untrue, and dictated by malice, should always be the subject of a civil remedy. But this bald method of stating the question assumes both the untruth and the malice." Veeder, Absolute Immunity in Defamation: Ju-

---

[8] While there is sound logic for refusing to recognize the absolute privilege as barring an action for malicious prosecution, see *Devlin* v. *Greiner*, 147 N.J. Super. 446, 469-472 (1977); Prosser, Torts § 120, at 851 (4th ed. 1971), we need not concern ourselves with that action because by no reading of the plaintiffs' complaints are the necessary allegations made. "The action for malicious prosecution lies for abuse of civil as well as criminal process . . . In order to prevail in such an action, the plaintiff has the burden of proving that the original action was brought maliciously and without probable cause, and has been terminated in favor of the plaintiff." *Rosenblum* v. *Ginis*, 297 Mass. 493, 497 (1937). See also Restatement (Second) of Torts § 674 (1977). The plaintiffs' complaints do not attack the instituting of suits against them. Rather, their claims are based solely on the wrongful insertion of the ad damnum amounts. Moreover, it must be noted that in neither complaint was it alleged that the malpractice action had terminated in favor of the health care provider.

dicial Proceedings, 9 Colum. L. Rev. 463, 469-470 (1909). This policy would be severely undercut if the absolute privilege were to be regarded as less than a bar to all actions arising out of the "conduct of parties and/or witnesses in connection with a judicial proceeding." *Devlin* v. *Greiner*, 147 N.J. Super. 446, 455 (1977). See also *Rainier's Dairies* v. *Raritan Valley Farms, Inc.*, 19 N.J. 552, 564 (1955) ("If the policy . . . is really to mean anything then we must not permit its circumvention by affording an almost equally unrestricted action under a different label"); *Thornton* v. *Rhoden*, 245 Cal. App. 2d at 99 ("If it is desirable to create an absolute privilege in defamation . . . because we do not want [an attorney or party] to have to be concerned with libel or slander actions . . ., we should not remove one concern and saddle him with another for doing precisely the same thing"). This reasoning compels us to find that the defendants have an absolute defense to all of the plaintiff's claims for relief.

3. *Civil Liability Under the Disciplinary Rules.*

In disposing of the plaintiffs' claims, we looked to the availability and the scope of the absolute privilege because the overriding public interest protected by it would nonetheless bar any action that could have survived an element-by-element analysis of all possible claims flowing from the factual allegations. However, the absolute privilege and the Canons of Ethics and Disciplinary Rules are founded upon equally important, closely related, noncompeting policy concerns. It is, therefore, most doubtful that the absolute privilege could bar any action found arising out of ethical and disciplinary considerations. (See note 3, *supra.*) We need not reflect on this point, however, because the plaintiffs have no claim against the defendants on this score. While an attorney may be liable in damages to a person injured by his or her misconduct, that liability must be based on a recognized and independent cause of action and not on ethical violations. Cf *Slotnick* v. *Pike*, 374 Mass. 822 (1977); *Rey* v. *Brown*, 4 Mass. App. Ct. 860 (1976). See also *Bickel* v. *Mackie*, 447 F. Supp. 1376, 1383-1384 (N.D.

Iowa 1978), aff'd 590 F.2d 341 (8th Cir. 1978); *Spencer* v. *Burglass*, 337 So.2d 596, 600 (La. Ct. App. 1976); *Drago* v. *Buonagurio*, 46 N.Y.2d 778, 779-780 (1978). The Canons of Ethics and Disciplinary Rules provide standards of professional conduct of attorneys and not grounds for civil liability.

4. *Conclusion.*

The plaintiffs' complaints do not set out claims against the defendants upon which relief could be granted, and the motions to dismiss were properly allowed. The judgment in each case is affirmed.

*So ordered.*