Connolly, J.
The plaintiff Thomas F. Tuffo commenced the instant action against the defendant Michael V. Morisi on July 10, 1991. In his original complaint, the plaintiff brought forth six counts which sought an accounting of various real estate transactions in which both parties participated. The plaintiff later amended his complaint withdrawing the first two counts and adding seven additional counts. The defendant filed this motion for summary judgment against the plaintiff on all counts. After a hearing on the motion and a review of the parties’ memoranda of law and accompanying exhibits, the defendant’s motion for summary judgment is denied.
BACKGROUND
The plaintiff, Thomas F. Tuffo (Tuffo) is a residential building contractor. The defendant, Michael V. Morisi (Morisi) is an attorney licensed to practice law in Massachusetts.
In or about 1984, Morisi met Edward Simpson (Simpson). Morisi represented USTrust Company in real estate transactions in which USTrust sold property to Simpson. Simpson subsequently asked Morisi to represent Simpson when he re-sold parcels of the property he had purchased from USTrust. In addition, Morisi represented Simpson individually, and various entities through which Simpson did business.
In or about 1985, Simpson answered a newspaper advertisement placed by Tuffo offering to sell a parcel of real estate. Simpson subsequently purchased the property from Tuffo as well as additional real estate from Tuffo thereafter.
In or about 1986, Tuffo was introduced to Morisi through Simpson. Before this introduction, Tuffo and Simpson began to do business in the purchase and development of real property for resale. Tuffo and Simpson divided the labor and responsibilities between them. It was agreed that the form of ownership of various real estate parcels would be a nominee trust in which Tuffo and Simpson would be equal beneficiaries. Morisi was retained to draft various real estate documents necessary for the establishment of the trusts, acquisition, and sale of the properties. Morisi would typically receive his instruction from Simpson and thereafter would provide the documentation and accountings to him.
*20 In or about the summer of 1987, Christopher Cummings (Cummings) and Will Pandolfo (Pandolfo) sought to acquire real property in Plymouth which was owned by a Real Estate Trust in which Tuffo and Simpson were each fifty percent beneficiaries. Cummings and Pandolfo requested help in acquiring purchase proceeds for the transaction. A first mortgage loan was discussed between Cummings and Pandolfo and Bostonian Corporation, a financing company owned by Simpson. Thereafter, Cummings and Pandolfo determined that they needed additional capital for the newly acquired properties and an arrangement was made in which Tuffo would borrow funds from Progressive Consumers Credit Union (PCCU) and place a first mortgage on the property which would subordinate the Bostonian Corporation mortgage to a secondary position. On September 11, 1987, Tuffo executed a note individually making him personally liable on a $750,000.00 loan from PCCU.
As part of their real estate transactions, Cummings and Pandolfo would sometimes establish nominee trusts to acquire and hold title to property. One of these trusts was the C&W II Realty Trust. The C&W II Realty Trust acquired Lots 8A, 9A, and 41B on Center Hill Road. At the time of these acquisitions, Cummings and Pandolfo served as the Trustees. They subsequently resigned and appointed Tuffo as Trustee in September 1987. In addition, Tuffo held a one-third beneficial interest in the trust.
In or about May 1988, the C&W II Realty Trust sold Lot 41B to Raymond and Janet Pike in which Morisi represented the trust. After the closing, Tuffo received a check for $12.02 representing the net undistributed amount due the trust from the sale. Cummings and Pandolfo questioned the limited proceeds. Morisi claimed that he had taken $10,000.00 as a legal fee for the Pike closing. Although Tuffo claims that he did not remember signing the document memorializing the legal fee agreement, it nevertheless bore his signature.
At about the same time as the Lot 41B sale, the C&W II Realty Trust deeded Lots 8A and 9A to the Bostonian Corporation in satisfaction of Bostonian Corporation’s second mortgage. Tuffo contends that under the Purchase and Sale Agreement, the C&W II Realty Trust had the right to reconvey the property in the future. Later that summer, Cummings and Pandolfo asked Morisi to reconvey the property but Morisi denied any knowledge of any repurchase agreement. While these transactions were taking place, a rift developed between Cummings and Pandolfo on one side and Simpson and Tuffo on the other.
In September of 1988, Cummings and Pandolfo sued Tuffo, Simpson, Bostonian Corporation, and Morisi seeking among other things, relief in the form of specific performance of the alleged agreement by Bostonian Corporation to reconvey Lots 8A and 9A to Cummings and Pandolfo. Morisi represented himself and all of the defendants in the action. Morisi, however, was disqualified on the ground that he would be a witness in the case. This suit was subsequently settled.
In September 1989, Tuffo filed a complaint against Simpson, Joan Beard, and several of Simpson’s entities seeking accountings for various real estate transactions. This lawsuit was also settled after Simpson transferred certain properties to Tuffo which they jointly owned.
The present lawsuit was filed against Morisi in July 1991. The original complaint contained six counts, each of which sought an accounting with respect to real estate transactions involving a particular trust. In July 1993, Tuffo amended his complaint by dismissing four of the original six counts and adding an additional six counts. The eight remaining counts which are the subject of this motion include (1) an accounting on two separate properties (Counts V and VI), (2) conversion (Count VII); (3) malpractice as a result of the conversion (Count VIII); (4) breach of contract (Count IX): (5) malpractice on the breach of contract (Count X); (6) an accounting on a second mortgage (Count XI [First]); and (7) aiding in transferring trust properties without consent of a beneficiary (Count XI [second]).
DISCUSSION
I.
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976): Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial." Flesner v. Technical Communications Corp., 410 Mass, 805, 809 (1991). “If the moving party establishes the absence of a triable issue the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, 404 Mass. at 17. ”[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
*21 II.
Morisi has moved for summary judgement on all counts of Tuffo’s complaint. Accordingly, this Court will discuss each in order.
A. Count V: Accounting on the Center Hill Road Property and Count’VI: Accounting on Brady Road Property
These Counts arise from real estate deals that Simpson and Tuffo transacted together. Count V alleges that Simpson and Tuffo acquired from Arnold and Albertina Bailey and Daniel and Grace LeBlanc two adjacent parcels of property on center Hill Road in Plymouth, Massachusetts. This property was subsequently subdivided into several lots. Lots 41A, 41D, 8A, and 9A were subsequently sold. Tuffo now seeks an accounting with respect to the sold lots.
Count VI alleges that Tuffo was not given an accounting of property he and Simpson purchased on Brady Road in Bourne, Massachusetts. The property was originally bought for $63,000.00 and sold on the same day for $95,000.00.
Morisi sets forth three arguments against providing an accounting for the transactions. First, Morisi contends that he is not obligated to account further to Tuffo because he either accounted to Tuffo directly or accounted to Simpson, who Morisi states is Tuffo’s partner under the Massachusetts Partnership Act.[1] Secondly, Morisi alleges that Simpson, on behalf of himself and all partnerships and trusts in which he had an interest, has expressly released Morisi from all claims. Finally, Morisi has attached accountings and explanations for the disputed transactions to his memorandum in support of his motion for summary judgment.
1. Massachusetts General Laws, Chapter 108A, §6(1) defines a partnership as “an association of two or more persons to carry on as co-owners a business for profit...” The factors to consider in determining whether a partnership exists include an agreement by the partners manifesting their intention to associate in a partnership. See Fenton v. Bryan, 33 Mass.App.Ct. 688, 691 (1992).
Essentially, Morisi’s first two arguments are grounded in the premise that Tuffo and Simpson were partners under the Massachusetts Uniform Partnership Act, G.L.c. 108A. In support of this proposition, Morisi contends that Tuffo has admitted, in several court documents, that he was partners with Simpson. See Deposition of Thomas F. Tuffo, October 7, 1993, Vol. I, at 21-24, 31-34, 70, 112, and 120-21; Deposition of Thomas F. Tuffo, October 15, 1993, Vol. II, at 41; Plaintiff's Supplemental Answer to Defendant’s Interrogatory Number 7 (Expert Interrogatory) at par. c. (viii); Plaintiff's Trial Memorandum, at 2 and 8; and Deposition of Joseph T. Doyle, Jr., November 18, 1996, Vol II, at 208-09.
Tuffo, however, contends that no document exists memorializing this partnership agreement, but rather only a trust instrument which indicates that both Tuffo and Simpson were fifty percent beneficiaries. Moreover, Tuffo states that he never received any accountings for the two properties in dispute.
Since there is no tangible written document supporting Morisi’s contention that he and Tuffo were partners under applicable Massachusetts law, it is necessary to analyze the intention of both Tuffo and Simpson in regard to their business association. The admissions that Morisi cites may carry weight at trial as to the credibility of Tuffo and his belief into what type of business arrangement he was entering into with Simpson. This type of inquiry, however, is best left for the trier of fact as factual issues remain as to whether Tuffo and Simpson were partners under Massachusetts law. Therefore, summary judgment is not appropriate under Count V and Count VI.
B. Count VII: Conversion and Count VIII: Malpractice
These Counts are based on a real estate closing of a house constructed on Lot 41B between Tuffo, as Trustee of the C&W II Realty Trust, and Raymond and Janet Pike (the Pikes). In March 1988, Tuffo signed an order sheet agreeing to sell lot 4 IB to the Pikes for $400,000.00. A disagreement ensued between Cummings and Pandolfo, who were the beneficiaries of the trust, regarding the purchase price. The Pikes through their attorney made a 93A demand on Tuffo threatening to bring suit unless he signed a purchase and sale agreement pursuant to the terms of the offer. As the closing date neared, Tuffo met with Morisi and asked him to represent the trust on the transfer of Lot 41B. Morisi agreed to represent the trust and the closing took place on May 25, 1988. On June 1, 1988, Morisi sent a letter to Tuffo, which stated among other things, that Morisi had taken $ 10,000.00 as an attorneys fee, and enclosed a check for $ 12.02 made payable to Tuffo as Trustee which represented the interest earned on the deposit.
Morisi sets forth three arguments in support of his motion for summary judgment as to Count VII. First, Morisi asserts that Tuffo lacks standing to challenge the payment of attorneys fees to Morisi. Second, Morisi claims that Tuffo’s conversion claim is precluded by the judgment in the case brought by Cummings against Tuffo. Finally, Morisi contends that Tuffo’s conversion claim is barred by the statute of limitations.
1. Standing
Morisi states that since Tuffo has brought this count in his individual capacity and not as Trustee of the C&W II Realty Trust, then he has no standing. Further, Morisi contends that even if Tuffo is a beneficiary to the trust, this does not change the outcome because only the Trustee can bring an action against *22 the attorney for the trust. In support of this contention, Morisi cites to the case of Spinner v. Nutt, 417 Mass. 549 (1994). In Spinner, the Supreme Judicial Court stated that it is the trustee who has standing to sue the trust attorney, not the beneficiaries. Id. at 553. Tuffo contends that the Spinner case is inapposite because the trust at issue in the case at bar is a nominee trust which gives the beneficiaries the controlling power. See Morrison v. Lennett, 415 Mass. 857, 860 (1993). Therefore, Tuffo contends that he did not have to bring this suit in his capacity as trustee but rather could bring it individually.
Lawyers who represent a trust typically represent the trustees, not the beneficiaries. See generally Spinner, 417 Mass. 553 (1994). However, the trust at issue in this count is a nominee trust which is defined as “an entity created for the purpose of holding legal title to property with the trustees having only perfunctory duties.” Morrison, 415 Mass. at 860, quoting Johnston v. Holiday Inns, Inc., 595 F.2d 890, 893 (1st Cir. 1979). “Unlike in a ‘true trust,’ the trustees of a nominee trust have no power, as such, to act in respect of the trust property, but may only act at the direction of. . . the beneficiaries.” Morrison, 415 Mass. at 860, quoting Birnbaum, Nominee Trust in Massachusetts Real Estate Practice, 60 Mass. L.Q. 364, 365 (1976). “A nominee trust is often used to hold legal title to real estate so that the identity of the trust beneficiary may remain undisclosed.” Morrison, 415 Mass. at 860 (citations omitted). Accordingly, the trustees of a nominee trust “are frequently seen as agents for the principals’ convenience rather than as trustees in the more familiar fiduciary sense.” Apahouser Lock & Security Corp. v. Carvelli, 26 Mass.App.Ct. 385, 388 (1988); see also Restatement (Second) of Agency, §14B, commentj and Birnbaum, The Nominee Trust in Massachusetts Real Estate Practice, 60 Mass. L.Q, 364, 366-68 (1976).
Tuffo’s argument is that the trust attorney’s obligation runs individually to each of the beneficiaries. This view has merit because the trust at issue is a nominee trust where the trustee typically has no power to exercise their own independent judgment and exists solely for the purpose of carrying out the beneficiaries’ business. Morisi, on the other hand, takes the position that the attorney is an agent for the trust, and has no contractual relationship with the beneficiaries. This view also has merit.
The precise question this case poses has not yet been the subject of any appellate decisions in the Commonwealth. In this Court’s view, however, the answer to the question turns, not on the label one attaches to the business entities under consideration, but on the specifics of the arrangements under which Morisi was engaged and the manner in which he thereafter interacted with the trust in carrying out his responsibilities. Those are highly fact-bound questions and are not appropriate for disposition at the summary judgment stage.
2. Res Judicata or Claim Preclusion
Morisi, through its motion for summary judgment, claims that the doctrine of res judicata or claim preclusion should preclude Tuffo from pursuing its conversion claim because Tuffo was a defendant in the case of Cummings v. Tuffo, C.A. No. 88-1701.[2] Morisi further contends that even if Tuffo were not considered a party to the Cummings litigation, he is still precluded by that action since there is a sufficient legal identity between parties whereby Cummings and Pandolfo essentially acted as Tuffo’s representative in the prior lawsuit. Since the doctrine of res judicata can be invoked to preclude relitigation of claims resolved during a prior action, summary judgment is appropriate for consideration in this case. See Miles v. Aetna Casualty and Surety Co., 412 Mass. 424, 426 (1992).
The doctrine of res judicata “provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to a suit and their privies are thereafter bound not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." Commissioner v. Sunnen, 333 U.S. 591, 597 (1948). The Massachusetts Supreme Judicial Court recognizes that “[p]ublic policy dictates that there be end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties.” Harker v. Holyoke, 390 Mass. 555, 558 (1983) (citations omitted). Three factors must be set for the doctrine of res judicata to be utilized by this Court: (1) identity or privity of the parties to the present and prior action; (2) identity of the causes of action; and (3) a prior final judgment on the merits. See Almeida v. Travelers Ins. Co., 383 Mass, 226, 229 (1981).
In the prior litigation, Cummings sued Tuffo and Morisi alleging that Morisi converted the same $10,000.00. Morisi represented both himself and Tuffo in this prior action. It would be unreasonable to hold that there was privity between Cummings and Tuffo when one was a plaintiff and the other a defendant in the prior action. Therefore, the prior litigation does not serve to preclude Tuffo from advancing this claim.
3. Statute of Limitations
Actions in tort must be commenced within three years after the cause of action accrues. See G.L.c. 260, §2A. A cause of action accrues when a person “(1) knew or had sufficient notice that she was harmed, and (2) knew or had sufficient notice of the cause of the harm. McGuinness v. Cotter, 412 Mass. 617, 627 (1992) (citations omitted).
Morisi’s last theory on Count VII asserts that Tuffo’s claim of conversion is barred by the three-year statute of limitations. Morisi states that Tuffo brought his claim for conversion five years after the incident, and the latest Tuffo should have known of the $10,000.00 *23 conversion was when he received the June 1988 letter in which Morisi stated that he had taken that amount as a fee. Therefore, he claims that the action had to be brought by June Í991. The original complaint was filed on July 10, 1991. Therefore he contends it was time-barred.
Tuffo argues that this issue has already been decided in Morisi’s motion to dismiss which was denied. See Tuffo v. Morisi, C.A. No. 91-01980, Memorandum of Decision and Order on Defendant’s Motion to Dismiss, February 22, 1994. That motion, however, dealt with the statute of limitations of the legal malpractice claim. Further, Tuffo argues that Morisi began his representation of Tuffo in 1986 and the relationship ended in July 1991. Since the action was filed in July, 1991, it came within the three-year statute of limitations.
Given Tuffo’s alleged ongoing relationship with Morisi, it is conceivable that Tuffo did not discover the claim for conversion until after June 1988. Nevertheless, whether Tuffo should have discovered the conversion prior to July 26, 1988 is a question of fact that is not appropriate for disposition at the summary judgment stage.
As for Count VIII, Morisi claims that the allegation for malpractice fails because a claim of conversion is not a claim of malpractice. In addition, Morisi puts forth the same arguments as those for Count VII (standing, res judicata, and statute of limitations).
“[A]n attorney may be liable in damages to a person injured by his or her misconduct, that liabiliiy must be based on a recognized and independent cause of action, and not on ethical violations.” Robert L. Sullivan, D.D.S., P.C. v. Birmingham, 11 Mass.App.Ct. 359, 368 (1981). Conversion is a recognized independent cause of action. Therefore, summary judgment is not appropriate.
C. Count IX (Breach of Contract) and Count X (Malpractice)
The facts relevant to these Counts deal with the litigation in Cummings v. Tuffo, discussed above. Morisi sets forth two arguments in support of his motion for summary judgment as to these counts. First, Morisi states that any alleged negligence on his part was not the proximate cause of any loss suffered by Tuffo. Second, Morisi claims that he was not negligent in his representation of Tuffo.
1. Proximate Causation
Morisi contends that Tuffo’s claim for breach of contract and malpractice is baseless because of the lack of proximate causation. In support of this argument, Morisi sets forth three grounds. First, Morisi claims that Tuffo could not be harmed by the prior litigation because after the case was settled, Tuffo did not have to pay anything. Secondly, Morisi contends that under the counts, Tuffo is not entitled to attorneys fees because of failure of consideration, impossibility of performance, and there was no proximate cause. Morisi finally states that Tuffo has no standing to enforce the purchase and sale agreement[3] on Lots 8A and 9A that was the basis for the prior litigation.
Generally, questions of causation, including proximate causation, are issues for the jury to decide. Solimene v. B. Grauel & Co. KG, 399 Mass. 790, 794 (1987). Accordingly, this Court is of the opinion that sufficient facts were set forth by Tuffo to overcome this issue at the summary judgment stage.
2. Negligent Representation
Morisi sets forth four arguments to support his contention that he was not negligent in his representation of Tuffo in the prior litigation. First, Morisi claims that since there was no judgment entered against Tuffo in the prior litigation, he did not have to pay any money. Secondly, Morisi claims that he could not have successfully opposed the lis pendens because the requirements of the lis pendens were already met. Further, the grant of the lis pendens was ex parte so only the person aggrieved could move to dissolve it. Since the Bostonian Corporation was the owner of the property and Tuffo was not a party to the purchase and sale agreement, then he could not be a person aggrieved within the meaning of the statute. Third, Morisi argues that neither the motion to dismiss nor the motion for summary judgment would have been successful because the Verified Complaint in the prior litigation revealed numerous factual disputes. Finally, Morisi states that Tuffo’s successor counsel took the same steps as Tuffo is alleging that Morisi should not have taken and his failure to mitigate the alleged damages bars recovery in this action.
Tuffo, on the other hand, disputes Morisi’s contentions asserting that there is no way of knowing whether an opposition to the lis pendens would have been unsuccessful. Secondly, Tuffo claims that even if Tuffo was not a person aggrieved within the lis pendens statute why would Morisi accept representing clients possessing such diverse legal positions. Third, as for the mitigation of damages argument, Tuffo claims that this argument presents questions of fact since there existed a specific timing necessary for the competent functioning of Tuffo’s counsel.
This Court is in agreement with Tuffo in that sufficient disputed facts exist as to the representation of Tuffo by Morisi. Accordingly, summary judgement is not appropriate at this stage as to these counts.
D. Count XI [First]: Accounting and Conversion[4]
The facts surrounding this particular count arise from a loan that Bostonian Corporation agreed to make to Cummings and Pandolfo for $60,000.00, with the net proceeds to them of $50,000.00. The debt was secured by a second mortgage on Lot 1 located on Nameloc Road in Plymouth. Simpson asked Morisi to represent Bostonian in the loan transaction and provided $10,000.00 to him. Thereafter, a check in the amount of $50,000.00 was delivered to Morisi evi *24 denced by Braintree Savings Bank Check No. 049856. The transaction was completed and Morisi endorsed the check over to Cummings and Pandolfo who later paid off the loan to Bostonian.
With respect to this transaction, Tuffo sued Simpson alleging that Tuffo loaned $50,000.00 to Bostonian Corporation, Bostonian loaned the money to Cummings and Pandolfo, Cummings and Pandolfo repaid Bostonian, but that Bostonian never repaid Tuffo. Simpson averred that an accounting was provided to Tuffo and the balances were transferred to Tuffo’s Center Hill Road account.
1. Accounting
Morisi contends that his only obligation to Tuffo was to provide an accounting to him. This, he states, was done. Tuffo, conversely, states that he had delivered the funds directly to Morisi who he believed was functioning as his attorney. Whether or not an attorney-client relationship existed is a question of fact. Further, a question of fact exists as to whether an accounting was actually given to Tuffo.
2. Conversion
Count XI [First] is essentially a claim that Morisi converted the $50,000.00 of Tuffo’s funds. Morisi contends that Tuffo had no right to immediate control of the $50,000.00 at the time of the alleged conversion. Morisi claims that Tuffo loaned the money to Bostonian Corporation, who in turn loaned the money to Cummings and Pandolfo, and not to Cummings and Pandolfo directly, so therefore, Morisi had a legal obligation to provide Bostonian with the payoff proceeds. Morisi says this is evidenced by Tuffo’s Verified Complaint in the case of Tuffo v. Beard.
Tuffo essentially contends that when Morisi was provided the funds from Tuffo with the direction to protect Tuffo’s interest, Morisi committed conversion when he lent the money without protection to Tuffo. Tuffo states that he never directed Morisi to provide the money to Bostonian Corporation.
Again, these arguments are filled with factual disputes that must be resolved by the trier of fact. Therefore, summary judgment is not appropriate.
E. Count XI [Second]: Trust Language
Count XI [Second] alleges that Morisi aided in effectuating the transfer of various trust properties that constituted a breach of contract. Morisi contends that these claims must fail for two reasons. First, Morisi is protected as a third-party dealing with the trusts. Secondly, Morisi argues that the matters alleged in this count are frivolous.
Article VI of the Tuffo/Simpson Trust provides that:
No purchaser ... or other parties dealing with the Trustee or Trust Property shall be responsible to see to the application of any purchase money, or of any money or property loaned or delivered to the Trustee, or to see that the terms and conditions of this Trust have been complied with or performed. Further, Article VII provides that:
Every instrument executed by the Trustee appearing from the records in the Plymouth County Registry of Deeds (the “Registry”) to be the Trustee hereunder claiming thereunder shall be conclusive as between any purchasers ... or other contracting parties and the Trustee and Beneficiaries that at the time of the execution and delivery thereof this Trust was in full force and effect, the Trustee executing and delivering such instrument was duly authorized, empowered, and directed by the Beneficiaries to execute and deliver the same as required by Article IV hereof, and with its terms and the terms of this Trust.
It is this language that Morisi contends that shields him from issues concerning the Trust. Tuffo, however, argues that Morisi was acting as Tuffo’s personal attorney in these matters and Morisi was obligated to account to Tuffo. Tuffo further alleges that the existence of an attorney-client relationship is a question of fact to be determined by the trier of fact. See Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 522 (1989).
With respect to the specifics of the transfers, Tuffo states that he never acquiesced to mortgages to the Bostonian Corporation and to P&M Associates, Inc.
The resolution of these issues is dependant upon whether an attorney-client relationship existed, and thus, a question of fact exists. Accordingly, summary judgment is not appropriate.
ORDER
For the foregoing reasons, it is hereby ORDERED that the Defendant, Michael Morisi’s Motion for Summary Judgment be DENIED.

 With respect to the Center Hill Road Property, Morisi contends that an accounting on Lot 41A was provided to Simpson on or about July 31, 1987; accountings with respect to Lots 8A, 9A, and 41B were provided to Simpson on or about June 29, 1987; an accounting on Lot 41B was provided to Tuffo on or about June 1, 1988: and finally, an accounting of Lots 8A and 9A was provided to Simpson and Tuffo on or about June 1, 1988.
With respect to the Brady Hill Road property, Morisi contends that he already has provided to both Simpson and Tuffo an accounting of the conveyance of Brady Road to C&W Realty Trust on or about September 24, 1987. Moreover, Morisi states that an accounting of the conveyance by C&W Realty Trust to Robert Bowman was provided to Simpson and Tuffo on or about June 20 and June 29, 1988. Finally, Morisi claims that Simpson provided Tuffo with accountings on or about June 28, 1989, on or about February 8, 1989, and in connection with the settlement of their litigation.

 The plaintiffs in that case alleged that Morisi converted the same $10,000. A consent judgment of dismissal with prejudice was entered.

 A dispute arises as to whether this Purchase and Sale Agreement was fully executed.

 There are two separate causes of action labelled Count XI. The Court will treat these as Count XI [First] and Count XI [Second].