Brassard, J.
The plaintiffs, Krista Lucas, Jared Lucas, Stacey Lucas and Devin Lucas (collectively “the Lucases”) brought suit against Newton-Wellesley Hospital, Newell Health Care Systems Inc., Ronald E. Bartlett, Deborah A. Norton, and Attorney Robert L. Bouley (“Bouley”), alleging, among other things, that Bouley committed fraud (Count VI) by making affirmative misrepresentations and failing to supplement interrogatory answers in a prior lawsuit. Bouley contends that his conduct during the course of that litigation is absolutely privileged, and therefore, the Lucases’ fraud claim must be dismissed. After a hearing and careful review of the papers, Bouley’s motion to dismiss is ALLOWED.
BACKGROUND
The Complaint alleges the following facts.
(1) The Malpractice Suit
On May 2, 1991, Krista Lucas was born at NewtonWellesley Hospital (“Hospital”). Hospital officials provided Krista with deficient care, and as a result, Krista’s jaundice developed into cerebral palsy. In 1994, the Lucases filed a malpractice suit against the Hospital and various employees including Nurse Madeleine Loan (“Nurse Loan”) and Nurse Patricia Bogatowski (“Nurse Bogatowski”). Medical Professional. Insurance Company (“ProMutual”), the Hospital’s primary malpractice insurer, was notified of the Lucases’ claim and took over the defense of the lawsuit. At the Hospital’s request, ProMutual hired Attorney Bouley, who had previously represented the Hospital in a number of lawsuits, to represent both the Hospital and Nurse Loan.
(2) The Lexington Policy
In addition to a $2 million dollar ProMutual policy, the Hospital also held an excess insurance policy from Lexington Insurance Company (“Lexington”), which provided additional coverage ranging from $5-$10 million. Because the Hospital and its vice presidents, Ronald E. Bartlett (“Bartlett”) and Deborah A. Norton (“Norton”), were engaged in a scheme to keep insurance premiums low, they purposely failed to notify Lexington of the Lucases’ lawsuit. Likewise, because it did not want to be pressured by Lexington to settle the lawsuit, ProMutual kept the amount it reserved for the Lucases’ claim artificially low so that Lexington would erroneously conclude that it faced no exposure when it received ProMutual’s list of pending claims.
Attorney Bouley knew or should have known about the Lexington insurance policy. Bouley, who was aware of the Hospital and ProMutual’s shared reluctance to notify Lexington of the Lucases’ lawsuit, did *353 not disclose the Lexington policy to the Lucases through document productions or interrogatory answers. Moreover, Bouley conspired with the Hospital and ProMutual to conceal the Lexington policy from the Lucases by stating that the only available insurance coverage was the ProMutual policy.
On February 11, 1998, a Middlesex Superior Court jury found Nurse Loan liable and awarded the Lucases $10.5 million in damages.[3] ProMutual then paid the Lucases the $2 million policy limit on behalf of Nurse Loan. Lexington, however, refused to pay the Lucases the remaining money, contending that it had not been properly notified of the Lucases’ lawsuit.[4]
(3) Nurse Bogatowski’s Interrogatories
In or about June 1995, while the underlying suit was pending, Nurse Bogatowski wrote a letter to Bouley notifying him that answers she had given to previous interrogatories were incorrect. Specifically, Bogatowski indicated that upon further reflection, she recalled Krista Lucas as being far more jaundiced than she had previously stated in her initial interrogatory answers. Despite having received the letter, Bouley failed to take any steps to amend Bogatowski’s interrogatory responses. Bogatowski was not found liable in the malpractice suit.
In an effort to recover the remaining portion of the jury verdict, the Lucases filed the present suit on February 9, 2001, alleging breach of contract and breach of the covenant of good faith and fair dealing against the Hospital (Counts I & II); negligence, violations of G.L.c. 93A, and interference with advantageous relations against the Hospital, Bartlett and Norton (Counts III, IV & V); and fraud against Bouley (Count VI). Bouley’s motion to dismiss Count VI is now before the court.
DISCUSSION
When evaluating the sufficiency of a complaint, the court must take as true the factual allegations of the complaint, as well as any inferences which can be drawn in the plaintiffs favor. Mass.R.Civ.P. 12(b)(6), Eyal v. Helen Broadcasting Corp. 411 Mass. 426, 429 (1991), and cases cited. The complaint should not be dismissed for failure to state a claim “unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977). A complaint is not subject to dismissal if it could support relief under any theory of law. Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979).
To state a viable fraud claim, the Lucases must allege sufficient facts demonstrating: (1) that Bouley made a false representation of material fact with knowledge of its falsity; (2) that Bouley made the statement for the purpose of inducing the Lucases to act thereon; and (3) that the Lucases relied on the statement to their detriment. See Macoviak v. Chase Home Mortg. Corp., 40 Mass.App.Ct. 755 (1996). Here, the Lucases contend that because they relied on Bouley’s representations that no excess insurance policy existed, they did not timely notify Lexington of the jury award, and are now precluded from collecting it by the terms of the policy. The Lucases further contend that had Bouley supplemented the interrogatory answers of Nurse Bogatowski, she would have been found liable in the malpractice suit and they would be able to collect judgment from her. In response, Bouley argues that the Lucases’ claim must be dismissed because it is premised on statements and actions he made in the course of litigation, which statements and actions are absolutely privileged and cannot give rise to civil liability.[5]
It is well-settled that an attorney’s statements are privileged “where such statements are made by an attorney engaged in his function as an attorney whether in the institution or conduct of litigation or in conference and other communications preliminary to litigation.” See Sriberg v. Raymond, 370 Mass. 105, 109 (1976). This doctrine is grounded in “the public policy of permitting attorneys complete freedom of expression and candor in communications in their efforts to secure justice for their clients.” Id. at 884. The absolute privilege “provides a complete defense even if the offensive statements are uttered maliciously or in bad faith,” see Doe v. Nutter, McClennen & Fish, 41 Mass.App.Ct. 137, 140 (1996), so long as the challenged remarks are relevant or pertinent to the judicial proceedings. See Sullivan v. Birmingham, 11 Mass.App.Ct. 359, 362 (1981); compare Kurky v. Hill, 44 Mass.App.Ct. 184, 191 (1996) (litigation privilege does not encompass attorney conduct in counseling and assisting clients in business matters generally). The privilege that attaches to such statements protects the maker from any civil liability thereon. Doe, 41 Mass.App.Ct. at 140.
In Srbierg v. Raymond, 370 Mass. at 105, the Supreme Judicial Court first reviewed the question of privilege pertaining to statements made by attorneys in connection with litigation. Recognizing “the public interest in the untrammeled flow of communication in connection with judicial proceedings requires freedom from inquiry into propriety of, as well as freedom from civil liability for, such utterances,” the Court held that a defamatory statement made in a mailed communication threatening to bring suit was absolutely privileged. Id. at 108. The Court reasoned,
We have hitherto held that statements by a party, counsel or witness in the institution of, or during the course of, a judicial proceeding are absolutely privileged provided such statements relate to that proceeding.

Id.

Although most cases discussing absolute privilege involve defamatory statements, the Appeals Court has applied the privilege broadly to bar other claims based on false or malicious statements. In Sullivan, 11 Mass.App.Ct. at 359, the Appeals Court held that the *354 defendant’s purposeful and wrongful inclusion of a specific dollar claim for damages in his malpractice complaint was absolutely privileged.[6] In so doing, the Court extended the privilege to provide a complete defense not only to claims of libel and intentional infliction of emotional distress, but to any civil liability based on allegations contained in the complaint. In pertinent part, the Court reasoned,
The rule exists, not because the malicious conduct of such persons ought not be actionable, but because if their conduct were actionable, actions would be brought against them in cases in which they had not spoken falsely and maliciously; it is not a desire to prevent actions from being brought in cases where they ought to be maintained, but the fear that if the rule were otherwise, numerous actions would be brought against persons who were acting honestly in the discharge of a duty . . . This policy would be severely undercut if the absolute privilege were to be regarded as less than a bar to all actions arising out of the “conduct of parties and/or witnesses in connection with a judicial proceeding.”
[Emphasis supplied.] Id. at 367-68; see also Correllas v. Viveiros, 410 Mass. 314, 324 (1991) (“A privilege which protected an individual from liability from defamation would be of little value if the individual were subject to liability under a different theory of tort”); Doe, 41 Mass.App.Ct. at 137 (letter in which firm threatened to bring law suit against plaintiff protected by absolute privilege, and thus, could not form the basis of liability for violation of Massachusetts Civil Rights Act, invasion of privacy, or intentional infliction of emotional distress).
Moreover, federal courts applying Massachusetts law have extended the privilege to blatantly false statements made during the course of litigation. In United States v. Rockland Trust, 860 F.Sup. 895 (D.Mass. 1994), the court held that an attorney’s statements involving “blatant and direct falsehood” made during the course of litigation were absolutely privileged under Massachusetts law. Id. at 902. In that case, a mortgagor falsely asserted to the court through his memorandum filed in support of his motion for summary judgment that the other defendants had been satisfied in full and had no interest in surplus funds. This purported statement of fact coupled with no opposition caused the court to grant the motion and order that the surplus funds be turned over to the mortgagor. Consequently, the mortgagee filed suit against the mortgagor’s attorney alleging negligence and fraud. The court found that even though the statement may have been “made maliciously or in bad faith,” it was pertinent to the action, and did not cause the attorney’s immunity to be withdrawn. Rather, “the privilege attachefd], providing [the attorney] a complete defense to any civil liability flowing from the statement.” Id. at 903.
In accordance with this precedent, this court finds that the absolute privilege bars the Lucases’ fraud claim against Bouley.[7] The false statements Bouley allegedly made concerning ProMutual being the Hospital’s sole insurance carrier relate directly to the malpractice suit, and thus, the statements are privileged. Similarly, the alleged failure to amend a false interrogatory response is privileged. Moreover, Bouley had no duty to the Lucases to disclose the existence of the Lexington policy or to supplement Nurse Bogatowski’s interrogatories.[8] See Lamare v. Basbanes, 418 Mass. 274, 276 (1994) (“[w]ithin the adversary system, ‘there is no room for existence of a duty running to the adversary’ ”); Page v. Frazier, 388 Mass. 55, 63 (1983). Absent a duty to disclose, there can be no actionable fraud for failure to disclose. See Kannavos v. Annino, 356 Mass. 42, 47 (1969); Austin v. Bradley, Barry & Tarlow, P.C., 836 F.Sup. 36, 38 (D.Mass. 1993) (attorneys who failed to disclose their client’s insolvency did not assist in their client’s fraud).
Although Bouley’s alleged behavior, if true, may constitute serious violations of his duties to his clients and/or the court, as well as violations of the Cannons of Ethics and Disciplinary Rules, such violations are not grounds for civil liability to a non-client third party because of the absolute litigation privilege. See Sullivan, 11 Mass.App.Ct. at 368-69; Doe, 41 Mass.App. at 141 (“the disciplinary rules provide standards of professional conduct of attorneys and do not in and of themselves create independent causes of action”). For these reasons, the court ALLOWS Bouley’s motion to dismiss.
ORDER
For the foregoing reasons, defendant Robert A. Bouley’s motion to dismiss is ALLOWED.

 That figure represents the actual award of $7.175 million plus interest.

 According to the Lucases, Lexington has also filed suit against the Hospital and Nurse Loan in an “attempt to avoid paying the Lucases’ jury award by claiming that it was not properly notified of the Lucases’ lawsuit.”

 Additionally, although not pertinent to the present motion, Bouley has submitted an affidavit to the court in which he attests to having no knowledge of the Lexington policy until February 1998, during the malpractice trial, whereupon he gave notice to the Lucases.

 Although the Sullivan complaint originally included only the party defendants, the Court considered “the factual allegations as they pertain to the defendants as well as to their attorneys, who prepared and signed the malpractice complaint but who were not named as defendants herein.” Sullivan, 11 Mass.App.Ct. at 360.

 In Hoosac Tunnel Dock and Elevator Co., v. O’Brien, 137 Mass. 424 (1884), a case cited by the Lucases, the Court broadly held that “if a lawyer who brings a suit procures an *355 unjust judgment against his adversary by suborning witnesses, by bribing the judge, jury, or arbitrators, or by other corrupt and illegal practices ... he should be responsible for his illegal acts to the party injured.” Id. The Court’s holding was based largely upon the attorney fraudulently inducing and persuading his client to file suit against the plaintiff after the client sustained an injury on the plaintiffs property, and to pretend, before and during trial, that he was severely injured when in fact he was not. Consequently, the client obtained damages despite suffering no injury. Although the lawyer’s conduct in fraudulently advising and assisting his client in that case remains actionable, see New Webster Nursing Home, Inc. v. Roy, 1995 WL 809900, 3 Mass. L. Rptr. 688 (Sup. Ct.) (Toomey, J) (attorney hired to assist clients in filing applications for Medicaid may be liable for fraudulently misrepresenting the status of the applications to non-clients), an attorney’s liability for statements made while representing a client during the course of litigation has been narrowed by the expansion of the absolute litigation privilege. See Sullivan, 11 Mass.App.Ct. at 359.

 Under Mass.R.Civ.P 26, the duty to supplement interrogatories is one that belongs to the client, not the attorney. See Mass.R.Civ.P. 26(e).